Frank Ellison, Administrator of Estate of Francis Ellison, Deceased, Appellee, v. Commonwealth Edison Company, Loomis Coal Company, Grundy Mining Company, and City of Chicago, Defendants, Commonwealth Edison Company, Appellant.

Gen. No. 45,992.

Opinion filed June 30, 1953.
Released for publication July 23, 1953.

GRIFFEN, STOUT & BAIRD, of Chicago, for appellant; GLENN E. BAIRD, of Chicago, of counsel.

JOSEPH BARBERA, of Chicago, for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Frank Ellison, administrator of the estate of Francis Ellison, deceased, filed a complaint for damages in the circuit court of Cook county against Commonwealth Edison Company, Loomis Coal Company, Grundy Mining Company and City of Chicago for the wrongful death of Francis Ellison, a boy of 11 years,

through drowning. At the close of plaintiff's case and on his motion, the City was dismissed. At the close of all the evidence the jury returned a verdict finding the Commonwealth Edison Company guilty and assessing plaintiff's damages at $15,000 and finding the remaining defendants not guilty. Upon plaintiff's remittitur of $5,000, judgment was entered for $10,000. For convenience, we will call the Commonwealth Edison Company the defendant. Motions by the defendant at the close of plaintiff's evidence and at the close of all the evidence for a directed verdict, for judgment notwithstanding the verdict and for a new trial were overruled. Defendant appeals.

On the afternoon of Friday, June 4, 1948, Francis Ellison, a boy of 11 years and 2 months, and his two companions, William Mittelstaedt and Francis Moskal, were at Ellison's house at 3043 Lock Street, which is 1500 west, on the near southwest side of Chicago. The boys were neighbors. It was a very hot day and Ellison, who had been swimming with Moskal the previous afternoon in a canal which extended from the Chicago River near South Loomis Street, suggested that they return to the canal to swim. The boys decided to make the trip to the canal. They started at about 5:00 p. m., and rode on two bicycles operated by Ellison and Moskal. Mittelstaedt rode on one of the bicycles. The distance to the Loomis Street bridge was about 5 blocks in a northerly direction. They crossed the bridge on their bicycles and turned west into the coalyard of the Loomis Coal Company. They rode as far as they could, dismounted and led their bicycles to about 25 feet from the "river," where there were bushes and weeds. We believe, from the record, that the witness intended to say that they stopped about 25 feet from the canal. At that place the 3 boys parked their bicycles, removed all of their clothing and went down to the water's edge.

There were no other youngsters in the vicinity at the time.

The south branch of the Chicago River flows in a southwesterly direction in the vicinity of Loomis Street, which street runs in a northerly and southerly direction and crosses the river on a bridge. The canal where the fatality occurred, sometimes called a slip, is known as Stetson's Canal and extends north from the south branch of the Chicago River (about 2500 south) to a short distance from Cermak Road (2200 south). It runs parallel with and 180 feet to a half block west of Loomis Street and is about 50 feet wide. Defendant owned and possessed the vacant land east of the canal and north of the river and leased a part of the land on the west side of Loomis Street to the Loomis Coal Company and its subsidiary, the Grundy Mining Company. These companies operated a coalyard there. The area is industrial, containing trucking terminals, coalyards, building-material yards, lumber yards and the like. North of the river to Cermak Road is all manufacturing. On the east side of Loomis Street is a large industrial building. On the south side of the river is a gasworks. North of the Loomis Coal Company's yard was another coal company's yard. On the west bank of the canal, across from defendant's vacant property, is the Lord and Bushnell Lumber Company's yard. South of the river and the gasworks is a residential area consisting mostly of old frame houses.

Along defendant's property at the canal's east shore line there was a retaining wall constructed of wooden planks. This wall resembled a wharf, or a tie-up dock and is sometimes referred to as a "pier." Parts of the wall were rotted away, forming a large opening in the wall. On direct examination Mittelstaedt testified that the water at the shore line was about 20 feet deep. On cross-examination, however, he said he did not know

that the water was 20 feet deep at the shore, but had heard someone say that at the inquest. After the three boys arrived at the water's edge, Ellison was the first to get into the water. He walked down to the hollowed part, or opening in the wall, sat on a board and slipped into the water. Then he swam out a little, around 3 feet, and came back. While the 3 boys were in the water a boat and tug boats passed in the river and the Loomis Street bridge was opened. After the boat passed, Mittelstaedt and Moskal began to put on their clothes, but Ellison decided to go back into the water. He walked down the bank, sat on a board in the hollow and slipped into the water. He was swimming in and out in the water and swam out a couple of feet from the shore line. Mittelstaedt, who, with Moskal was dressing on the bank, heard Ellison holler, "Help!," looked toward the canal and saw Ellison going down in the middle of the canal. Neither Mittelstaedt nor Moskal saw him swim out to the middle of the canal. Mittelstaedt ran to the bridge for a life preserver. He returned to the canal with one, but Ellison had drowned and disappeared. There was evidence that the pier and the canal were visible from Loomis Street. Plaintiff testified that he observed youngsters swimming in the slip and running around down there during the summer months.

Defendant argues that as plaintiff failed to adduce any evidence entitling him to invoke the doctrine of attractive nuisance, the court should have directed a verdict against him. Plaintiff insists that the doctrine of attractive nuisance is clearly applicable to the facts. In the case of *McDermott v. Burke,* 256 Ill. 401, the court said (405):

"It is an unquestioned general rule that the owner and occupier of private grounds is under no obligation to keep them in any particular state or condition to promote the safety of trespassers, intruders, idlers,

62

bare licensees, or others who come upon them without any invitation, either express or implied; and this general rule applies equally to adults and children. . . . Under our decisions, which are most liberal to children, if the conditions are such that the owner may reasonably anticipate that children of such tender age as to be incapable of exercising proper care for their own safety may by their own instincts be attracted to the dangerous thing and thereby exposed to danger, he will be liable for an injury to a child so attracted, resulting from leaving the machine or dangerous thing exposed. Under such circumstances he would have good reason to expect that children, from their well known habits and nature, would be attracted to the dangerous thing, and its maintenance would amount to an implied invitation to them, so that they cannot be regarded as voluntary trespassers."

Plaintiff's theory is that the pier constituted an attractive nuisance; that it could be seen from the street; that for a long time prior to the occurrence children had been accustomed to play on the pier; that the defendant should have known of its attractiveness to children; that defendant did not use reasonable care to protect children from the inherent dangers presented; and that the questions of fact involved were fairly presented to the jury and that the verdict should stand.

██ The evidence shows that the canal, which was not owned or controlled by the defendant, but abutted its land, appeared to the deceased to be a desirable and attractive place to swim and that, for some unknown reason, he was accidentally drowned while swimming. It was a hot afternoon in June and he suggested to his companions that they go to the canal for a swim. He had been swimming there the previous afternoon. The evidence does not indicate that he desired to play on the defendant's premises or on the retaining wall at

63

the water's edge. The allurement was the water in the canal in which he desired to swim. He used defendant's vacant premises to reach the water, to store his bicycle and clothing and to enter the water from the hollowed part of the wooden retaining wall. There is no proof that there is anything dangerous about defendant's premises, the retaining wall or the public waterway. There is proof that during the hot summer months children were observed swimming in the canal and running around in the vicinity, but the evidence is silent as to any previous mishaps there. The deceased was not injured on defendant's premises and was not injured on or caused to fall off its retaining wall into the water. He had left its premises and was swimming around in the waters of the public canal when he was drowned. There was nothing unusual, exceptional or peculiar about defendant's premises. The waterway was as dangerous as any body of water but not any more so. The element of unknown, concealed or hidden danger is absent. Plaintiff urges that portions of the wood retaining wall on defendant's premises bordering the waters of the canal were rotted and dilapidated and that, therefore, the retaining wall attracted boys to use it to enter the water to swim. The evidence shows that the boys did not consider the wall an attraction; that the wall did not constitute a dangerous instrumentality or thing; that the wall did not directly or indirectly cause the injury; and that the sole attraction was the canal for the purpose of swimming in its waters.

██ Plaintiff asserts that the premises were not fenced or guarded so as to keep boys from swimming at the point where they entered the canal. In *Emond v. Kimberly-Clark Co.,* 159 Wis. 83, the court said (88):

"To require all natural or artificial streams or ponds so located as to endanger the safety of children to be fenced or guarded would in the ordinary settled com-

munity practically include all streams and ponds—be they in public parks or upon private soil,—for children are self-constituted licensees if not trespassers everywhere. And to construct a boy-proof fence at a reasonable cost would tax the inventive genius of an Edison."

We are of the opinion that under the facts of the case the plaintiff is not in a position to invoke the doctrine of attractive nuisance.

■ We also agree with defendant that even if the condition of its retaining wall bordering the canal was not adequate that fact was not the proximate cause of the drowning of the deceased. The deceased entered upon the premises with the predetermined purpose of swimming in the public canal. There is no evidence that he came with the purpose of playing on defendant's property or on its retaining wall. The boys removed their clothing so they could swim. That was the only purpose they had in mind. It is not contended by plaintiff that the deceased was injured on the retaining wall or was caused to slip or fall into the water by a defect in the wall. Under the circumstances, to hold the defendant liable for damages for the drowning would place an intolerable burden on the owners of private land which contain sea walls, beaches, retaining walls and piers bordering on public lakes, rivers and other bodies of water in which boys are accustomed to swim.

■■ Under the facts and the law the court should have directed a verdict for the defendant. Therefore, the judgment of the circuit court of Cook county is reversed and the cause is remanded with directions to enter judgment notwithstanding the verdict in favor of defendant, Commonwealth Edison Company, a corporation, and against plaintiff.

*Judgment reversed and cause remanded with directions.*

NIEMEYER, P. J. and FRIEND, J., concur.