GEORGE H. BOOTH,  a Minor, by Frank Booth, as his Father and Next Friend, Plaintiff-Appellant, v. GOODYEAR TIRE AND RUBBER COMPANY *et al.*, Defendants-Appellees.

Third District   No. 3—91—0293

Opinion filed January 27, 1992.

Robert L. Fogel, of Hilfman & Fogel, P.C., of Chicago (John Kovac, of counsel), for appellant.

Janella L. Barbrow, of Knight, Hoppe, Fanning & Knight, Ltd., of Des Plaines (Sarah Hansen Sotos, of counsel), for appellee City of Rock Falls.

Patricia T. Bergeson, of Pope, Ballard, Shepard & Fowle, Ltd., of Chicago (Stephen M. Naughton, of counsel), for appellee Goodyear Tire and Rubber Company.

Douglas J. Pomatto, of Heyl, Royster, Voelker & Allen, of Rockford, and Gary D. Nelson and Karen L. Kendall, both of Heyl, Royster, Voelker & Allen, of Peoria, for appellee Montgomery Investment Company.

JUSTICE McCUSKEY delivered the opinion of the court:

Plaintiff, George H. Booth, a minor, by his father and next friend, Frank Booth, brought an action to recover damages for injuries sustained when he came in contact with electric power lines. At the time of the accident, plaintiff was trespassing on property occupied by defendant, Goodyear Tire and Rubber Company (Goodyear), and owned by defendant, Montgomery Investment Company (Montgomery). The power lines were owned and maintained by defendant, City of Rock Falls (the City). The trial court granted defendants' motions to dismiss plaintiff's third amended complaint. The plaintiff appeals. The issue presented is whether defendants owed a duty of ordinary care to a trespassing and allegedly "mentally disabled" 13-year-old. We affirm the dismissal of plaintiff's complaint.

Montgomery owned warehouses on the north and south sides of West First Street in Rock Falls, Illinois. The buildings were leased to Goodyear. Metal ladders were attached on the West First Street sides of the buildings. The rungs of the ladders began one foot above street level and extended to the rooftops of the warehouses.

The warehouses were connected by an enclosed catwalk which spanned West First Street. The rooftop of the catwalk was accessible from the rooftops of the warehouses. Six uninsulated electric power

lines, running parallel to West First Street near the south warehouse, passed over the roof of the catwalk at a vertical clearance of five feet. The three southernmost lines were deenergized. The remaining, energized lines allegedly did not service the property or buildings owned by Montgomery and occupied by Goodyear.

At approximately 1 p.m. on August 29, 1982, plaintiff was severely injured when he came in contact with one of the energized lines as he walked in a northerly direction on the rooftop of the enclosed catwalk. Plaintiff was 13 years 7 months old on the date of the accident. Plaintiff's complaint alleged that he was "mentally disabled."

Plaintiff filed suit against the defendants alleging negligence and willful and wanton conduct in the ownership, maintenance, and operation of the buildings and power lines. Counts I through IV of the third amended complaint were directed against Montgomery and Goodyear. Plaintiff asserted in counts I and III that Montgomery and Goodyear owed trespassing children a duty of reasonable care under the negligence theory developed in *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836. Counts II and IV alleged that Montgomery and Goodyear owed a duty to trespassers to refrain from willfully or wantonly causing injury by creating or allowing to exist an inherently dangerous condition on the premises. Count V sounded in negligence against the City.

Defendants filed motions attacking the pleading pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615). Defendants argued that they owed no duty to plaintiff as a matter of law because the power lines constituted an obvious danger. The trial court agreed. The trial court rejected the plaintiff's contention that his alleged "mental disab[ility]" exempted him from the line of cases which hold that children of his age are expected to appreciate and avoid the risks associated with power lines. On appeal, plaintiff contends that the trial court erred in relieving defendants of liability. We disagree.

In determining the propriety of the dismissal of a complaint, we must accept all properly pleaded facts as true. We are concerned only with the question of law presented by the pleadings. The question of duty—the legal obligation imposed upon one for the benefit of another—is a question of law to be determined by the court. *Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 554-55, 328 N.E.2d 538, 539-40.

■ Our supreme court in *Kahn* created a narrow exception to the general rule that owners and occupiers of land are under *no* duty to

trespassers to keep their premises in any particular state or condition to promote the safety of trespassers, whether they be minors or adults. For trespassing children, the court in *Kahn* rejected the traditional concept of the attractive nuisance doctrine and instead adopted a test based on the foreseeability of harm to the child. The court held that the landowner or person in possession and control of the premises is liable for the injuries sustained by children when (1) the injury is caused by a dangerous condition on the property, and (2) the owner or person in possession of the property knew or should have known that young people habitually frequent the area. *Kahn*, 5 Ill. 2d at 625, 126 N.E.2d at 842.

The rule developed by *Kahn* and its progeny is that an owner or person in possession of property may be liable for the harm occurring to children if the plaintiff shows that:

> (1) the defendant knew or should have known that young children habitually frequented the premises;

> (2) a dangerous condition existed on the land;

> (3) the dangerous condition was likely to injure children because of their inability to appreciate the risk involved; and

> (4) the burden of remedying the condition was slight compared to the risk involved.

*Kahn*, 5 Ill. 2d at 625, 126 N.E.2d at 836; *Stevens v. Riley* (1991), 219 Ill. App. 3d 823, 829, 580 N.E.2d 160, 164.

■ However, we must not lose sight of a threshold requirement before we can apply the *Kahn* test. The threshold inquiry is whether the plaintiff has established the existence of a dangerous condition on the property. A dangerous condition is one which is likely to cause injury to children who, by reason of their immaturity, might be incapable of appreciating the risk involved. However, if the condition involves an *obvious* risk which children *generally* would be expected to appreciate and avoid, the landowner is under *no* duty to remedy the condition. (*Stevens*, 219 Ill. App. 3d at 829-30, 580 N.E.2d at 164; *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 326, 383 N.E.2d 177, 180.) Even if an owner or occupier knows that children frequent the premises, he is not required to guard against the possibility that children will injure themselves when exposed to obvious or common conditions. *Corcoran*, 73 Ill. 2d at 326, 383 N.E.2d at 180.

The facts of the instant appeal are nearly identical to those presented to this court in *Hansen v. Goodyear Tire & Rubber Co.* (1990), 194 Ill. App. 3d 351, 551 N.E.2d 253. The accidents occurred at the same location and involved the same power lines. The only differences between the two incidents are (1) the plaintiff in *Hansen* was 16 years

old; (2) the accident in *Hansen* occurred after sunset; and (3) the bottom rung of the ladder in *Hansen* had been shortened from one foot above street level to eight feet above ground level. In *Hansen*, this court affirmed the trial court's grant of summary judgment in favor of defendants. The court in *Hansen* held that the defendants had no duty as a matter of law to remedy the dangerous condition because the minor trespasser was capable of appreciating the danger posed by electric power lines. (*Hansen*, 194 Ill. App. 3d at 356, 551 N.E.2d at 257.) We reaffirm our holding in *Hansen*. We hold that, as a matter of law, a 13-year 7-month-old trespassing child is capable of appreciating the danger posed by contacting electric power lines.

■ Initially, as in *Hansen*, we reject plaintiff's attempt to distinguish between the duties owed by Goodyear and Montgomery, as owner and occupier of the premises, and the duty owed by the City, as owner of the power lines. Plaintiff's argument recognizes that Goodyear and Montgomery are protected by the landowner's privilege against liability to trespassers for ordinary negligence. However, plaintiff asserts that the City is precluded from invoking that privilege under the analysis in *Knyal v. Illinois Power Co.* (1988), 169 Ill. App. 3d 440, 523 N.E.2d 639. The court in *Knyal* held that the privilege against liability to trespassers allowed the owner or occupier is not extended to a supplier of electricity unless the electric lines are on the premises with the consent of the owner and for the purpose of supplying the premises with electrical service. Plaintiff argues that since he made contact with the power line at a point *after* it branched off the south warehouse, the line he contacted no longer supplied the premises with electrical service. Under plaintiff's analysis, the City owes him a duty of ordinary care because the City cannot invoke the landowner's privilege against liability. This court rejected as illogical a similar argument in *Hansen*. This court in *Hansen* refused to distinguish between the points of contact prior to or after the electric lines branched off to supply the warehouse. We conclude that the privilege against liability applies to the City, because we find the power lines were indeed "on" the premises to service the property. Given the configuration of the power lines and their location in relation to the buildings, the trial court properly concluded that the City had the same privilege against liability for ordinary negligence in the maintenance of its power lines as did Montgomery and Goodyear.

■ We note that, as a matter of law, electric power lines have been held to present an obvious danger to 14-year-olds. (*Bonder v. Commonwealth Edison Co.* (1988), 168 Ill. App. 3d 80, 522 N.E.2d 227; *In re Estate of Dickens* (1987), 161 Ill. App. 3d 565, 515 N.E.2d

208.) In *Bonder*, the appellate court held that a 14-year-old who contacted power lines while climbing a tree was capable of understanding the dangers. (*Bonder*, 168 Ill. App. 3d at 82-83, 522 N.E.2d at 229.) In *Dickens*, a 14-year-old who was electrocuted while attempting to install a CB antenna near power lines was deemed capable of appreciating the danger of electrical energy. (*Dickens*, 161 Ill. App. 3d at 571, 515 N.E.2d at 212.) We find the plaintiff here to be of a similar age as the plaintiffs in *Bonder* and *Dickens*. Therefore, we find a nearly 14-year-old child should be presumed to understand and appreciate the danger associated with power lines.

Plaintiff argues a different result should occur under the *Kahn* doctrine because of the plaintiff's alleged mental disability. Plaintiff suggests that he should be placed in a category of children 7 to 10 years of age rather than in a group of children his own age. However, we find that the plaintiff's subjective understanding of the risk of contacting power lines is irrelevant. As a matter of *law*, plaintiff is deemed to have appreciated the risk involved with contacting power lines even though subjectively the plaintiff might not actually understand the danger. Defendants are not expected to foresee the unique mental and physical limitations of an individual minor in terms of his particular ability to appreciate the risk of harm. *Colls v. City of Chicago* (1991), 212 Ill. App. 3d 904, 946, 571 N.E.2d 951, 977-78.

In *Salinas v. Chicago Park District* (1989), 189 Ill. App. 3d 55, 545 N.E.2d 184, plaintiffs contended that the eight-year-old decedent should be classified as a child of younger age because she was a mongoloid. Plaintiffs argued that the risk of the decedent falling off a playground slide, while obvious to other eight-year-olds, was not obvious to the eight-year-old decedent. The court rejected this type of argument, reiterating that the subjective understandings and limitations of a child are *not* considered when the risk is otherwise deemed obvious to children *generally*. (*Salinas*, 189 Ill. App. 3d at 61, 545 N.E.2d at 187.) The *Salinas* court affirmed a grant of summary judgment in favor of the defendant. The court noted "if a child is too young chronologically or mentally to be 'at large,' the duty to supervise that child as to obvious risks lies primarily with the accompanying parent." *Salinas*, 189 Ill. App. 3d at 62, 545 N.E.2d at 188.

In any event, plaintiff contends that the obvious risk rule should no longer be applied following our supreme court's decision in *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 554 N.E.2d 223. Plaintiff argues the court in *Ward* abolished the obvious-risk rule. We disagree. The opinion in *Ward* makes clear that the obvious-risk rule retains its viability, although subject to some conditions. (*Ward*, 136 Ill. 2d at

149, 554 N.E.2d at 231.) Those conditions include an allowance for the possibility that seemingly innocuous conditions might present an unreasonable danger under certain circumstances (*Ward*, 136 Ill. 2d at 152, 554 N.E.2d at 232), and that consideration must be given to the possibility that an entrant will be distracted or momentarily forgetful. *Ward*, 136 Ill. 2d at 155, 554 N.E.2d at 233-34; see *Moore v. Kickapoo Fire Protection District* (1991), 210 Ill. App. 3d 736, 569 N.E.2d 214.

■ Finally, we find that plaintiff failed to allege sufficient facts to maintain a cause of action for willful and wanton conduct against defendants. The allegations of plaintiff's complaint are conclusory and are not supported by facts. Plaintiff merely restates the allegations of negligence set forth in his complaint as his allegations for willful and wanton conduct. In order to successfully plead willful and wanton conduct, a plaintiff must allege facts demonstrating a duty of the defendant and a breach of that duty which proximately caused the plaintiff's injury. (*Durham v. Forest Preserve District* (1986), 152 Ill. App. 3d 472, 479, 504 N.E.2d 899, 904.) Plaintiff alleged only the mere conclusion that defendants "knew or should have known, that minor children in the community regularly walked upon the roof areas of the Goodyear buildings, and between them by walking upon the flat roof of the catwalk." These allegations are insufficient to establish willful and wanton conduct.

Plaintiff concedes that the risks associated with fire, water, and falling from a height are considered obvious to children. (*Cope v. Doe* (1984), 102 Ill. 2d 278, 286-87, 464 N.E.2d 1023, 1027.) Had plaintiff fallen while climbing the warehouse ladder or had fallen after having reached the rooftops of the warehouse or catwalk, *no* legal duty would have been imposed upon the defendants to warn of or remedy the condition. Therefore, we find it difficult to reconcile these clear legal principles with plaintiff's allegations that defendants were under a legal duty to barricade the ladder or rooftops to eliminate the danger presented by the uninsulated power lines. While we are not unsympathetic to the minor plaintiff's injury and pain and suffering, under the facts of this case, we cannot find the defendants owed any legal duty to a nearly 14-year-old child trespasser who came in contact with electric power lines in broad daylight. Clearly, the child trespasser exposed himself to a multitude of dangers the moment he climbed the warehouse ladder. A child trespasser of plaintiff's age and experience, unsupervised during the daylight hours, shall be deemed to have appreciated those dangers associated with electric power lines.

The judgment of the circuit court dismissing plaintiff's third amended complaint with prejudice is affirmed.

Affirmed.

BARRY, P.J., and GORMAN, J., concur.