ALI YACOUB, Special Adm'r of the Estates of Mohammad Yacoub *et al.*, Deceased, *et al.*, Plaintiff-Appellant, v. CHICAGO PARK DISTRICT *et al.*, Defendants-Appellees.

First District (5th Division) No. 1—92—1240

Opinion filed June 18, 1993.

Corboy & Demetrio, P.C., of Chicago (Philip H. Corboy, Philip Hartnett Corboy, Jr., and David A. Novoselsky, of counsel), for appellant.

Gessler, Flynn, Fleischmann, Hughes & Socol, Ltd., of Chicago (John K. Hughes, William P. Jones, and Benjamin P. Beringer, of counsel), for appellee Chicago Park District.

Williams & Montgomery, Ltd., of Chicago (Barry L. Kroll, Joseph J. Morford, James K. Horstman, and C. Barry Montgomery, of counsel), for appellee Metropolitan Sanitary District of Greater Chicago.

JUSTICE McNULTY delivered the opinion of the court:

Plaintiff Ali Yacoub, as administrator of the estates of his children, Mohammed Yacoub and Vicktoria Yacoub, and father and next friend of his son, Jonathon Yacoub, brought suit for wrongful death and damages against the Chicago Park District (Park District) and the Metropolitan Water Reclamation District (MWRD). The trial court granted defendants' motions for summary judgment and plaintiff appeals.

The incident giving rise to this action occurred on January 30, 1987, while nine-year-old Mohammed, his eight-year-old brother Jonathon and their five-year-old sister Vicktoria were playing in the West River Park across from their home. According to the testimony of Jonathon Yacoub, the children were playing on a swing set when they decided to go through a hole in a chain-link fence to investigate an abandoned car on the other side. Also on the other side of the fence was the partially ice-covered Chicago River, a small waterfall and a dam. The children proceeded onto the partially ice-covered water. They then left the river and returned through the fence to the swing set. Minutes later, they again went through the fence and returned to the river. While the children ran and slid on the ice, Jonathon fell into a 40-foot by 40-foot area of water at the edge of the ice. Jonathon called for Mohammed to grab his arm but instead, Mohammad jumped into the river and drowned. With Vicktoria's assistance, Jonathon was able to crawl out of the water. While return-

ing with Jonathon toward the fence, Vicktoria noticed Jonathon's gloves on the ice, near the water's edge. As she reached for the gloves, Vicktoria fell into the open water and drowned.

Plaintiff's second amended complaint alleged that both defendants were guilty of wilful and wanton conduct in failing to maintain, inspect and repair the chain-link fence. Defendants filed motions for summary judgment and the trial court granted the motions, finding that neither the Park District nor MWRD owed a duty to plaintiff's children since the partially ice-covered river constitutes an open and obvious danger. For the following reasons, we affirm the decision of the trial court.

Summary judgment is to be granted only where the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c).) The granting of summary judgments is to be reviewed de novo. Dinkins v. Ebbersten (1992), 234 Ill. App. 3d 978, 600 N.E.2d 873.

■ The general rule in Illinois is that a lessor who relinquishes control of property to a lessee owes no duty to a third party injured while on the leased property. (Lamkin v. Towner (1990), 138 Ill. 2d 510, 563 N.E.2d 449.) Exceptions to this rule exist when: (1) a latent defect existed at the time of the leasing that the lessor should have known about; (2) there is a fraudulent concealment by a landlord of a dangerous condition; (3) the defect causing the harm amounts to a nuisance; (4) the landlord makes a promise to repair a condition at the time of leasing; and (5) the landlord violates a statutory requirement owed a tenant who is in the class designated to be protected by such requirement. Moreno v. Balmoral Racing Club, Inc. (1991), 217 Ill. App. 3d 365, 577 N.E.2d 179.

It is undisputed that MWRD leased the West River Park property to the Park District. Moreover, plaintiff does not refute the above-stated principles regarding leased property or claim that one of the exceptions to the general rule is applicable to this case. Instead, plaintiff claims that MWRD's duty to repair the fence and the surrounding area in which the drowning occurred arose because the Park District did not have exclusive possession and control of the leased premises. Plaintiff finds significant the fact that MWRD had the right to construct improvements on the property, the right to approve any proposed improvements by the Park District, and the right to access the property's sewer operations.

■ We do not believe that MWRD's contractual right to make improvements, approve improvements and access the property creates a duty on the part of MWRD. Virtually every landlord retains the right to enter the premises in order to construct improvements and to prevent the tenant from constructing improvements to the leased premises. These reservations in the lease do not, however, change the rule that it is the lessee, as the party in possession and control of the premises, who owes a duty to a third person and can be liable for injuries from defective conditions on the premises. (See *National Tea Co. v. Gaylord Discount Department Stores, Inc.* (1981), 100 Ill. App. 3d 806, 427 N.E.2d 345; *Cerniglia v. Farris* (1987), 160 Ill. App. 3d 568, 514 N.E.2d 792.) Furthermore, the record reveals that it was the Park District and not MWRD that had exclusive responsibility for inspecting, repairing and maintaining the property in question. Accordingly, it is clear that the trial court properly granted summary judgment in favor of MWRD since the property had been leased to the Park District.

■ Turning to plaintiff's claim against the Park District, we find that although the Park District was the party in possession of the property in question, it owed no duty to the Yacoub children. A duty is imposed on an owner, possessor or controller of land when the owner, possessor or controller knows or should know that children frequent the premises and the cause of the child's injury constitutes a dangerous condition on the premises. (*Cope v. Doe* (1984), 102 Ill. 2d 278, 464 N.E.2d 1023.) A dangerous condition is one which is likely to cause injury to children who by reason of their age and immaturity could not be expected to comprehend and avoid risks. (*Cope*, 102 Ill. 2d at 286, 464 N.E.2d at 1027.) Owners and occupiers of land owe no duty to remedy conditions which present open and obvious risks which children would be expected to appreciate and avoid. (*Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 383 N.E.2d 177.) The dangers of ice-covered or partially ice-covered water are risks which are considered obvious to children. *Cope*, 102 Ill. 2d 278, 464 N.E.2d 1023 (partially ice-covered retention pond was an open and obvious danger to a seven-year-old); *Wingate v. Camelot Swim Club, Inc.* (1990), 193 Ill. App. 3d 963, 550 N.E.2d 665 (partially ice-covered duck pond held to be obvious danger to five-year-old and seven-year-old); *Weber v. Village of Carol Stream* (1984), 129 Ill. App. 3d 628, 472 N.E.2d 1203) (completely frozen retention pond held to be obvious danger to nine-year-old).

■ Accordingly, it is clear that the risks associated with the partially frozen Chicago River were open and obvious to the Yacoub chil-

dren, ages 10, 8 and 5. Furthermore, the undisputed evidence is that the Yacoub children knew of and appreciated the dangers of the river. (See *Swearingen v. Korfist* (1989), 181 Ill. App. 3d 357, 537 N.E.2d 365 (a minor's special knowledge regarding the alleged dangerous condition should be taken into account).) The children had been advised by their parents of the dangers of the river, particularly the danger of drowning, and on the children's two trips down to the river on the day of the accident, they specifically discussed the danger of the river.

Plaintiff attempts to persuade us that in light of the supreme court's decision in *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 554 N.E.2d 223, the open and obvious rule is no longer a bar to a plaintiff's action. In *Ward,* the court stated that a possessor of land is not liable to his invitees when their injuries are caused by open and obvious conditions *unless the possessor anticipates the harm.* However, that decision has no impact on the facts as presented here, since *Ward* specifically stated:

> "Certainly a condition may be so blatantly obvious and in such position on the defendant's premises that he could not reasonably be expected to anticipate that people will fail to protect themselves from any danger posed by the condition. Even in the case of children on the premises, this court has held that the owner or possessor has no duty to remedy conditions presenting obvious risks which children would generally be expected to appreciate and avoid. (*Cope v. Doe* (1984), 102 Ill. 2d 278, 286 (seven-year-old fell through ice on artificial retention pond) \*\*\*)." *Ward,* 136 Ill. 2d at 148, 554 N.E.2d at 230.

See *Moore v. Kickapoo Fire Protection District* (1991), 210 Ill. App. 3d 736, 569 N.E.2d 214 (*Ward* did not sound a death knell for the open and obvious rule).

Plaintiff also attempts to establish a duty on the part of the Park District by shifting our focus from the river to the fence. Plaintiff claims that the Park District breached its duty to properly maintain the fence. However, despite the fact that there was a hole in the fence, it was not the fence that injured Jonathon and killed Mohammed and Vicktoria. (See *Ellison v. Commonwealth Edison Co.* (1953), 351 Ill. App. 58, 113 N.E.2d 471.) Our focus remains on the partially ice-covered river, since Jonathon was injured and Mohammed and Vicktoria drowned by falling off the edge of the ice into the river. The fact that the Yacoub children gained access to the river through a hole in the fence does not make the dangers associated with the river less open and obvious.

Plaintiff relies on *Engel v. Chicago & North Western Transportation Co.* (1989), 186 Ill. App. 3d 522, 542 N.E.2d 729, and *La Salle National Bank v. City of Chicago* (1985), 132 Ill. App. 3d 607, 478 N.E.2d 417, wherein it was held that the dangers associated with train flipping are not open and obvious to children, and the defendants had a duty to repair holes in fences surrounding the trains. That rule, however, is limited to train-flipping cases and does not apply where the fence surrounds water or ice since, as the court in *Engel* noted, "The policy determination that most children are presumed to know the risks of injury inherent in certain types of activities, such as playing with fire or playing in bodies of water, does not *per se* extend to the train-flipping cases." *Engel*, 186 Ill. App. 3d at 530-31.

We are not unsympathetic to the tragedy suffered by the Yacoub family. Nonetheless, we are bound by the existing law regarding the open and obvious danger of water and ice. Accordingly, for the reasons set forth above, we find that the trial court properly granted summary judgment in favor of defendants.

Affirmed.

MURRAY and COUSINS, JJ., concur.