MT. ZION STATE BANK AND TRUST, Guardian of the Estate of Dale Beavers, Jr., a Minor, Plaintiff-Appellant, v. CONSOLIDATED COMMUNICATIONS, INC., Defendant-Appellee.

Fifth District   No. 5—93—0723

Opinion filed September 12, 1994.—Rehearing denied October 24, 1994.

Thomas F. Londrigan, of Londrigan, Potter & Randle, P.C., and Timothy J. Londrigan, of Londrigan & Londrigan, both of Springfield, for appellant.

Karen L. Kendall, of Heyl, Royster, Voelker & Allen, of Peoria, and Frederick P. Velde, of Springfield, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

"When I was a child, I spake as a child, I understood as a child, I thought as a child ***." I Corinthians 13:11.

If a babysitter left a two-year-old toddler alone in a bathroom whose tub was half-filled with water, and if, tragically, the child climbed into the tub and drowned, most people would sympathize with the child and the family, but they would also have a question in the back of their minds. What would that question be?

It would not be, "Why did that two-year-old child climb into the tub?" because the answer to that question is already known: two-year-olds do not appreciate the danger of even six inches of clear water in a bathtub in the family home. All people know this.

The question that is asked, "Why did the babysitter leave a two-

year-old alone near a tub of water?" examines not the conduct of the child but that of the responsible person. Was there an emergency, did something on the stove boil over, did another child in the house hurt herself, did the phone ring and the sitter step out for just a second, or did the sitter just leave the child alone for no reason? And, if it is the last, then would not all people say, "That babysitter did not fulfill his or her duty."

If all people know that children do not appreciate the danger of water, and if all people would conclude that babysitters who leave children unguarded near tubs of water are derelict in their duties, then why do some courts continue to reach the opposite conclusion: that children appreciate such dangers and that because of that appreciation on the part of the child there is no duty on the part of a defendant? This case presents another instance of the application of the open-and-obvious-danger rule.

The Van Hoosers maintain an above-ground swimming pool, which is enclosed with a picket fence. The gate to the fence is secured with a padlock. Plaintiff claims that prior to June 9, 1991, Consolidated Communications, Inc. (Consolidated), entered onto the Van Hooser property and, without consent or other lawful authority, erected a telephone utility pedestal immediately adjacent to the Van Hoosers' fence.

On June 9, 1991, six-year-old Dale Beavers, Jr., was playing next door to the Van Hoosers. Dale stepped upon the utility pedestal to scale the fence and gain access to the Van Hoosers' pool. Dale apparently sustained irreversible brain damage and is a total-care patient in the home of his parents.

Plaintiff alleged that Consolidated breached its duty of reasonable care by erecting the utility pedestal next to the fence and thereby allowing children of tender years **to gain** access to the pool. The trial court found that defendant owed no duty to the plaintiff based on the open-and-obvious-danger rule and dismissed the complaint. Plaintiff appeals. We reverse and remand.

In determining the propriety of the dismissal of a complaint, we must accept all properly pleaded facts as true. We are concerned only with the question of law presented by the pleadings. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 554-55, 328 N.E.2d 538, 539-40.) Plaintiff first argues that the trial court improperly applied the law of premises liability to this case because only an owner or lawful occupier of land is entitled to invoke the law of premises liability. Plaintiff contends that since the defendant had no authority to enter the Van Hooser premises, it cannot claim the protection that premises liability law affords to lawful owners and occupiers of land.

Defendant contends that it owes no duty because the danger of a pool is open and obvious and there should not be a different standard for nonowners.

We resolve this case on a more basic plane: the theoretically open and obvious nature of an above-ground pool does not relieve defendant of its duty to exercise ordinary care, and to deny such a duty in this case would be both illogical and unjust.

Why is the open-and-obvious-danger rule illogical when applied to the facts of this case? There are several reasons, but first, let us state the open-and-obvious-danger rule,

> "A defendant has no duty to warn about a danger that is open and obvious,"

and then examine it in some detail.

Assuming that a defendant would ordinarily have a duty to alleviate, guard against, or at least issue a warning about a dangerous condition, why should the duty be decreased as the condition becomes more dangerous or more open and obvious? Would not and should not society expect just the opposite rule of law: the more dangerous the condition, the greater the duty to do something about it? No, say some courts, because if the danger is so open and obvious, then all plaintiffs should be aware of it, and if the defendant knows that all plaintiffs are aware of the danger because it is so open and obvious, then the defendant cannot reasonably foresee that anyone would encounter such a hazard, and since it is not reasonably foreseeable for the defendant, the defendant has no duty to do anything about it.

This analysis sounds simple and straightforward, and since it has been said often enough, it must have some validity. (See *Cope v. Doe* (1984), 102 Ill. 2d 278, 464 N.E.2d 1023; *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 383 N.E.2d 177; *Yacoub v. Chicago Park District* (1993), 248 Ill. App. 3d 958, 618 N.E.2d 685; *Lerma v. Rockford Blacktop Construction Co.* (1993), 247 Ill. App. 3d 567, 617 N.E.2d 531; *Booth v. Goodyear Tire & Rubber Co.* (1992), 224 Ill. App. 3d 720, 587 N.E.2d 9; *Engel v. Chicago & North Western Transportation Co.* (1989), 186 Ill. App. 3d 522, 542 N.E.2d 729; *Alop v. Edgewood Valley Community Association* (1987), 154 Ill. App. 3d 482, 507 N.E.2d 19.) What's wrong with it?

First, it stands the safeguard of foreseeability on its head. What is the function of foreseeability in a duty analysis? To protect the defendant from events that are too remote to be likely to occur from the defendant's standpoint. This defensive use of foreseeability is what is typically encountered. The factual situation is so strange, the chances of the occurrence or injury are so small, that courts conclude that it would be unfair to impose a duty under such circumstances.

In open-and-obvious-danger situations, however, the foreseeability factor is switched from what the defendant could foresee to what the plaintiff should foresee. If there is an open and obvious danger, the defendant can obviously foresee potential injury; why then no duty? "Because," supporters of the rule say, "the plaintiff too can foresee the injury, and if the plaintiff can, then the defendant cannot conceive of a plaintiff encountering the danger."

What happens to this framework when the first plaintiff is injured by such a condition? Does it not collapse? Once a plaintiff has been injured by an encounter with any open and obvious danger, then does not such an injury from that particular condition become foreseeable for all defendants? And if it does, and if the lack of foreseeability was the sole factor that relieved defendants of a duty, then do not all defendants have a duty to take whatever action is necessary to alleviate the condition?

An affirmative answer to this question could have serious consequences for society in terms of the inefficient allocation of resources, but the economists in the courtrooms need not become unduly concerned because the question contained the solution by including the language, "and if the lack of foreseeability was the sole factor." Since the lack of foreseeability was not really the sole factor (and not really the basis of the open-and-obvious-danger rule), there is no need to impose an onerous and unnecessary burden upon defendants.

But if the defendant's lack of foreseeability is not the basis for the open-and-obvious-danger rule, then what is? The true basis for the rule was alluded to by the supreme court in *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 554 N.E.2d 223, and explored further in *Harnischfeger Corp. v. Gleason Crane Rentals, Inc.* (1991), 223 Ill. App. 3d 444, 585 N.E.2d 166. In *Ward*, the supreme court noted:

> "Prior to this court's adoption of a comparative negligence formula in *Alvis v. Ribar* (1981), 85 Ill. 2d 1[, 421 N.E.2d 886], it made little difference whether the principle was treated as one of 'no duty' or one of contributory negligence. Under either characterization the result was the same: no recovery." (*Ward,* 136 Ill. 2d at 143, 554 N.E.2d at 228.)

*Harnischfeger* stated that the open-and-obvious-danger rule views the duty concept from the standpoint of the plaintiff's conduct. As the supreme court noted in *Ward,* during the time that contributory negligence was a complete bar to recovery and the burden of proving freedom from contributory negligence was on the plaintiff, courts could reach the conclusion of no liability based on the plaintiff's inability to prove freedom from contributory negligence. These conclusions of no liability may have eased courts into their conclusions of no duty, but as the supreme court has stated:

"Attempting to dispose of litigation by merely invoking such relative and impressive characterizations as 'known' or 'obvious' is certainly no adequate substitute for assessing the scope of the defendant's duty under the circumstances in accordance with the considerations previously identified by this court." *Ward*, 136 Ill. 2d at 147-48, 554 N.E.2d at 230, citing *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525, 513 N.E.2d 387.

To summarize our position, it is not that the defendant has no duty to deal with obviously dangerous conditions; it is that defendant's breach of duty may be relieved by the plaintiff's voluntary encounter with the known danger. Although this concept may have some validity under certain circumstances, it is totally illogical when applied to children under seven in Illinois.

To illustrate the lack of logic behind the open-and-obvious-danger rule in such cases, we will examine it in the form of a categorical syllogism (see Aldisert, Logic for Lawyers (1989)), but in two steps:

Step One

Major premise: All people know that X is dangerous.
Minor premise: Plaintiff is a person.
Conclusion: Plaintiff knows X is dangerous.

Step Two

Major premise: All people who know X is dangerous are barred from recovery for negligently caused personal injuries if X is the injuring condition.
Minor premise: Plaintiff knows X is dangerous.
Conclusion: Plaintiff is barred from recovery for negligently caused personal injuries if X was the injuring condition.

Both these syllogisms are logically sound. There may be problems with the degree of knowledge possessed by plaintiffs, there may be differences in the degrees of awareness possessed by plaintiffs *vis-a-vis* defendants, and there may be other reasons to modify or reject the rule itself, but for now, we focus only on the logical problem it presents when it is considered in conjunction with another coexisting categorical syllogism that applies to the facts of this case:

Major premise: All people under seven years of age do not know X is dangerous.
Minor premise: Dale Beavers, Jr., is a person under seven years of age.
Conclusion: Dale Beavers, Jr., does not know X was dangerous.

We know that the major premise of our last syllogism is legally sound. From before the time of Blackstone (1 W. Blackstone, Commentaries *453) to the present, it has been conclusively presumed

that a child under seven years old cannot be contributorily negligent. (*Mort v. Walter* (1983), 98 Ill. 2d 391, 395, 457 N.E.2d 18, 21.) This has been the law in Illinois since at least 1886 (see *Chicago, St. Louis & Pittsburgh R.R. Co. v. Welsh* (1886), 118 Ill. 572, 9 N.E. 197); it was not changed by *Alvis v. Ribar*'s adoption of pure comparative negligence (see *Mort v. Walter* (1983), 98 Ill. 2d 391, 457 N.E.2d 18; see also *Toney v. Mazariegos* (1988), 166 Ill. App. 3d 399, 404, 519 N.E.2d 1035, 1038), nor was it changed by the legislature's adoption of modified comparative negligence (735 ILCS 5/2—1116 (West 1992); *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 144, 554 N.E.2d 223, 228 (adoption of comparative negligence has no effect on basic duty defendant owes to plaintiff)).

We now have a conclusion that conflicts with the conclusion in Step 1 of the open-and-obvious-danger syllogism. What is the problem here? How do we have these logically sound syllogisms resulting in conflicting conclusions? The flaw obviously lies in the major premise of the Step 1 syllogism, "All people know X is dangerous." The premise is overbroad; it claims too much; it rejects settled principles of Illinois law; and it ultimately imputes *absolute knowledge* of *all* dangers to children who are presumed incapable of possessing knowledge of *any* danger. Does either the major premise of the last syllogism or its conclusion mean that Dale Beavers, Jr., is guaranteed recovery in this case? No, it simply means (1) that he did not know X was dangerous, and (2) that he is not automatically and completely barred from recovery.

Note that the lack of logic of the open-and-obvious-danger rule when applied to children under seven does not depend on acceptance of the earlier analysis of the open-and-obvious-danger rule as based upon plaintiff's conduct rather than defendant's lack of foreseeability. Even if the latter is accepted as the basis of the rule, *i.e.*, no duty because no defendant could foresee that any plaintiff would encounter such an obvious danger, the conclusions will still conflict because it *is* foreseeable that children under seven, who are legally incapable of seeing *any* danger, will encounter this danger. Therefore, under either the traditional no-foreseeability basis or, we submit, the true contributory-negligence-as-a-matter-of-law basis, logic compels us to conclude that the open-and-obvious-danger rule cannot be applied to children under seven.

Ordinarily we would conclude the opinion at this point with a reversal and remandment. We are aware, however, that the supreme court has applied the open-and-obvious-danger rule to children under seven. (See *Cope v. Doe,* 102 Ill. 2d 278, 464 N.E.2d 1023; *Corcoran,* 73 Ill. 2d 316, 383 N.E.2d 177.) Therefore, we will not limit our examina-

tion to the logic of the problem but will follow Holmes' aphorism, "The life of the law has not been logic: it has been experience" (O. Holmes, The Common Law 1 (1923)), and proceed to an examination of the justice of the open-and-obvious-danger rule in this case when viewed through the lens of experience.

In this part of our analysis we will assume, as the defendant maintains, that owners/occupiers of land and nonowners, such as the defendant, should be treated equally. Later, we shall examine plaintiff's contention that nonowner/occupiers should not be afforded the protection of the open-and-obvious-danger rule.

At early common law landowners were rarely responsible for injuries to trespassers, but exceptions to the general rule of no liability were created, among them a rule of liability for injuries to trespassing children which occurred as a result of a condition created or maintained on their land and which attracted children. The rule with regard to the liability of the landowner to trespassing children originated in *Sioux City & Pacific R.R. Co. v. Stout* (1874), 84 U.S. (17 Wall.) 657, 21 L. Ed. 745, where a child was injured while playing with a railroad turntable. From that case and others like it, the rule became known as the "turntable doctrine." An early Minnesota case, *Keffe v. Milwaukee & St. Paul R. Co.* (1875), 21 Minn. 207, 18 Am. Rep. 393, coined the theory that the child had been allured or enticed onto the premises by the condition created by the defendant; thus, the phrase "attractive nuisance" was born. *Pekin v. McMahon* (1895), 154 Ill. 141, 39 N.E. 484; see also *Stedwell v. City of Chicago* (1921), 297 Ill. 486, 130 N.E. 729.

The attractive-nuisance doctrine was the law in Illinois until *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836, which involved an 11-year-old trespassing child injured while playing on a stack of lumber which collapsed. A supplier had piled the lumber on the land without adequate support. The supreme court held that plaintiff's judgment against both the contractor/occupier and the supplier should stand, despite the general rule that an owner or occupier is under no duty of ordinary care to keep his property in any particular condition for the safety of trespassers. (*Kahn*, 5 Ill. 2d at 625, 126 N.E.2d at 841-42.) *Kahn* abolished the attractive-nuisance doctrine in Illinois and held that the principles of ordinary negligence govern the liability of an owner or occupier of land upon which a child is injured:

> "The naming or labeling of a certain set of facts as being an 'attractive nuisance' case *** has often led to undesirable conclusions. *** [A] child in his youthful fancy, imagination and ingenuity can

make a plaything of almost anything and is attracted by almost everything, [and] the only proper basis for decision in such cases dealing with personal injuries to children are the customary rules of ordinary negligence cases." (*Kahn*, 5 Ill. 2d at 624, 126 N.E.2d at 841.)

*Kahn* abandoned the position that a dangerous condition had to lure children onto the premises and adopted instead the rule that foreseeability is the cornerstone by which liability is determined. (*Alop v. Edgewood Valley Community Association* (1987), 154 Ill. App. 3d 482, 484, 507 N.E.2d 19, 21.)

"[I]nfants, as a general rule, have no greater rights to go upon the land of others than adults, and *** their minority of itself imposes no duty upon the occupier of land to expect them or prepare for their safety. [Citations.] It is recognized, however, that an exception exists where *the owner or person in possession knows*, or should know, that young children habitually frequent the vicinity of a defective structure or dangerous agency existing on the land, which is likely to cause injury to them because they, by reason of their immaturity, are incapable of appreciating the risk involved, and where the expense or inconvenience of remedying the condition is slight compared to the risk to the children. In such cases there is a duty upon *the owner or other person in possession and control of the premises* to exercise due care to remedy the condition or otherwise protect the children from injury resulting from it." (Emphasis added.) *Kahn*, 5 Ill. 2d at 625, 126 N.E.2d at 841-42.

The historical bases for the protection afforded owners of property have been explored elsewhere and need not be discussed in detail. (See Bernardi, *Loss of the Land Occupier's Preferred Position—Abrogation of the Common Law Classifications of Trespasser, Invitee, Licensee*, 13 St. Louis U. L.J. 449 (1969); 5 F. Harper, F. James & O. Gray, Torts (2d ed. 1986).) What is significant, however, is that society has progressed from the time when owners could do absolutely what they wanted with their property without any responsibility toward others who might be injured upon the property.

Anyone who has observed children can testify that they do not develop at the same rate. Although not everyone has the benefit of having children or of having the opportunity to observe children develop, there are numerous studies on the levels and rates of children's growth.

The developmental-milestone theory of Jean Piaget, a noted child development expert, provides insight:

| | | |
|---|---|---|
| Birth-2 years: | — | the major developmental tasks are coordination of the infant's actions or motor activities |
| 8-12 months: | — | children use previous behavioral achievements primarily as the basis for adding new achievements to their expanding repertoire |
| | — | ends and means are differentiated by experimenting |
| 12-18 months: | — | discovery of new means through experimentation |
| | — | curiosity and novelty-seeking behavior |
| | — | reasoning comes into play and is developed |
| | — | play is important |
| 2-7 years: | — | continuous investigation of one's world develops |
| | — | the child knows the world only as he sees it |
| | — | play occupies most of the waking hours; "how" and "why" becomes a primary tool for adaptation |
| | — | imaginary play is important |
| | — | the child *cannot* merge concepts of objects, space, and causality into interrelationships with a concept of time |
| | — | the first real *beginning* of cognition occurs |
| | — | the child can think of only *one* idea at a time |
| 7-11 years: | — | the child examines parts to gain knowledge of the whole |
| | — | perceptions are more accurate |
| | — | play is used for understanding the physical and social world |
| 12-15 years: | — | childhood ends and youth begins |
| | — | there is a systematic approach to problems |
| | — | there is logical deduction by implication |
| | — | the individual thinks beyond the present. |

See Gallahue, Understanding Motor Development in Children 29-33 (1982).

The scientific method requires the proponent of a theory or a proposition to state the proposition and then to test it to see if it can be supported or disproved. When a proposition is not supported by the tests, there is a problem with either the tests or the proposition. (V. Booth, Physical Science, A Study of Matter and Energy 146.) Although legal propositions are not normally susceptible to the rigorous tests that can be used in the physical sciences, we can obtain a general idea of the validity of the open-and-obvious-danger rule when

applied to young children by the unfortunate fact that they are repeatedly injured by open and obvious dangers. Why are fences put around pools and why can't parents relax at the beach? Why are child gates put at the top of staircases? Why are parents in constant attendance with children at wiener roasts? Because, in each instance, Holmes' realization of the importance of experience in the life of the law is reflected in adults' knowledge that children do not fully appreciate the risks of even these common, obvious dangers.

Professor Prosser spoke succinctly about the validity of the open-and-obvious-danger rule when applied to children:

> "The soundness of such arbitrary rules as to what children may always be expected to comprehend may be open to question. The impressive number of cases of dead children, attesting their failure in fact to appreciate these risks, is sufficient in itself to cast some doubt upon the validity of the assumption." Prosser, *Trespassing Children*, 47 Col. L. Rev. 427, 458 (1959).

As we come closer to home, we see the supreme court restricting the application of the rule and in fact coming close to abrogating it completely.

> "We conclude that to the extent that the rule may have held that the duty of reasonable care owed by an owner or occupier to those lawfully on his premises does not under any circumstances extend to conditions which are known or obvious to such entrants, *that rule is not the law in this State.*
>
> * * *
>
> *** [N]either of these explanations justifies a per se rule* that under no circumstances does the defendant's duty of reasonable care extend to conditions which may be labeled 'open and obvious' or of which the plaintiff is in some general sense 'aware.' "

(Emphasis added and omitted.) (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 145-47, 554 N.E.2d 223, 229-30.) Thus, the supreme court has removed the open-and-obvious-danger rule as a *per se* bar to recovery in all cases. When this ruling is coupled with the supreme court's holding in *Kahn* that trespassing children are to be governed by the ordinary rules of negligence, it becomes a matter of examining the facts of this case under these rules.

What are the facts in this case? An examination of the complaint, whose well-pled allegations we are required to accept as true for purposes of considering defendant's section 2—615 motion to dismiss (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 554, 328 N.E.2d 538, 539; 735 ILCS 5/2—615 (West 1992)), reveals that plaintiff, a six-year-old child, was enabled to overcome the protective barrier of the Van Hoosers' fence because defendant placed its pedestal immediately

adjacent to the fence. Plaintiff also alleged that defendant had no legal right, by easement or otherwise, to place its pedestal next to the fence, that the pedestal did not serve the Van Hoosers' property, that the playground equipment and the outdoor pool were clearly visible at the time the pedestal was installed, and that the Van Hoosers' gate was locked when Dale used the pedestal to scale the fence.

In determining whether a duty exists under these circumstances, we are directed by the supreme court to consider the likelihood of injury, the foreseeability of injury, the magnitude of the burden of eliminating or guarding against the problem, and the consequences of placing that burden upon the defendant (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 513 N.E.2d 387). There may be additional factors to consider (see *Harnischfeger Corp. v. Gleason Crane Rentals, Inc.* (1991), 223 Ill. App. 3d 444, 585 N.E.2d 166; Green, *Foreseeability in Negligence Law*, 61 Colum. L. Rev. 1401 (1961); Green, *The Duty Problem in Negligence Cases: II*, 29 Colum. L. Rev. 255 (1929); Shapo, *A Representational Theory of Consumer Protection: Doctrine, Function and Legal Liability for Product Disappointment*, 60 Va. L. Rev. 1109, 1370-71 (1974)), but we will limit our consideration to the four factors delineated by the supreme court.

An examination of each of these factors supports the imposition of a duty in this case. The likelihood of injury is high, and its foreseeability is fairly obvious; placing a pedestal next to a fence that encloses a pool is an invitation to a small child to use the pedestal to climb the fence. The placement is not as blatant an act as opening the gate would be; it is more subtle, a stile, but the effect is the same. Therefore, the likelihood of injury and its foreseeability are fairly high. In contrast, the magnitude of the burden of guarding against the injury and the consequences of placing that burden on the defendant would appear to be quite low. Since the pedestal did not even serve the Van Hoosers' property, there was no apparent necessity to locate it next to their fence, and as far as the record discloses, it was not necessary to place it next to the fence for any reason. All of the traditional factors support the imposition of a duty, and this support is strengthened when the potentially serious nature of injuries to small children in pools is considered.

Arrayed against the factors favoring the imposition of a duty is only the open-and-obvious-danger rule, but as we have indicated, the supreme court curtailed its applicability in *Ward*. In addition, we have to wonder whether its theoretical applicability to cases involving water, heights, and fire is meritorious. Assume that some demented individual spent the summer digging a six-foot-deep pond in the

middle of a grade school playground, and that he placed a few 20-foot-tall flagpoles with platforms on them and ladders built with child-sized steps leading to the platforms. Assume that on the first day of school he built 15 roaring bonfires and piled marshmallows and sticks next to each one, and that he then sat back and waited for the children to come out and play. Would anyone contend that such an individual would not be subject to at least civil, if not criminal, penalties? Of course not, and that penalty, that recognition of a duty that had been egregiously breached by such conduct, would be imposed even though water, heights, and fire were the dangerous agents. Why? Because it is not and never has been the open and obvious nature of the dangerous conditions that has been the reason to deny liability. Liability might have been denied because ponds were located in rural areas, because trees were ubiquitous, and because children quickly learn that fires burn—because, in short, the magnitude of the burden of guarding against the danger and the consequences of placing that burden on the defendant when weighed against the likelihood and foreseeability of the injury did not warrant the imposition of a duty in *those* cases. Such conclusions may be proper determinations of courts applying the ordinary rules of negligence, as required by *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836, but an absolute bar based on some theoretical appreciation of all known dangers, particularly by young children, is not.

Although defendant has referred to "knowledge of children old enough to roam unattended," which seems to suggest a lack of parental supervision, we are not concerned here with parental duties. If a breach of those duties is involved, it can be examined in a third-party action. We are judging only the defendant's duty at this time. The supreme court of Michigan examined this problem and stated:

> "In short, Justice, in all her majesty and with all her wisdom[,] has been permitted to peer down upon this child standing at her bar and solemnly say to him that the water-filled hole in the public street in front of his home was of no concern to him. If the words penetrate his damaged brain at all, and he makes bold to ask why, the answer is clear: 'Because to you there is no danger. No reasonable person could ever anticipate that you might escape from your mother and run into the street and fall into the hole.'

> All of this is straight from outer space. It is pure fantasy. It is unrelated to life on this earth. It requires no treatise on child development to tell us that a child 2 years, 8 months of age is as inquisitive as a hornet and as slippery as an eel. Despite the utmost vigilance he will at times, when the mother is cooking, or

washing, or caring for others, make his get-away. Is the situation as to his safety in this event as though he lived on the frontier, or in the jungle, or does modern urban society demand more for its young? Should the penalty visited upon him, who is not even aware of his fault, exceed the well-known measures of normal family discipline? Or should it include brain damage or death? It is our answer to give, not his." *Elbert v. City of Saginaw* (1961), 363 Mich. 463, 480, 109 N.W.2d 879, 887.

Dostoevsky has been credited with saying, "The degree of civilization in a society can be judged by entering its prisons." (See Respectfully Quoted: A Dictionary of Quotations 286 (1992).) How much more will courts be judged by the way they treat society's children? In 1924, New York's National Child Labor Committee published a collection of poems.

> "The golf links lie so near the mill
> That almost every day
> The laboring children can look out,
> And see the men at play."[1]

> "No fledgling feeds the father-bird!
> No chicken feeds the hen!
> No kitten mouses for the cat—
> This glory is for men.
> We are the Wisest, Strongest Race—
> Loud may our praise be sung!
> The only animal alive
> That lives upon its young!"[2]

> (Untitled Poems by (1) Sarah N. Clogharm and (2) Charlotte Perkins Gilman, Poems of Child Labor, at 13, 18, National Child Labor Committee (1924).)

Although both the poignant irony of the first poem and the brutal imagery of the second were directed at the evils of child labor, they are both also illustrative of what actually takes place when the remnants of the open-and-obvious-danger rule are used to relieve defendants of their responsibility to children. We conclude that a civilized society cannot continue to support its landowners on the bodies of its children.

The reference to landowners returns us to plaintiff's first point, that even if the open-and-obvious-danger rule has any continued efficacy with regard to landowners, that fact is based on the historical treatment of landowners as a special species protected by the courts. Plaintiff contends that such protection, first, is not warranted and, second, should not be extended to nonowners, such as the allegedly

trespassing defendant in this case. Our previous discussion of the open-and-obvious-danger rule should make it clear that we conclude that landowners should not have the protection of the open-and-obvious-danger rule when the plaintiff is a child under seven. We certainly would not extend whatever limited protection it might have offered to landowners after *Ward* and *Deibert v. Bauer Brothers Construction Co.* (1990), 141 Ill. 2d 430, 566 N.E.2d 239 to any other class. See W. Prosser, Torts § 58, at 359 (4th ed. 1971).

In conclusion, to the extent that the open-and-obvious-danger rule still exists in Illinois (see *Ward* and *Deibert*), (1) it is illogical to apply it to children under seven, (2) it would be unjust to apply it under the facts of this case because the defendant does have a duty not to negate the protection that the Van Hoosers had afforded their pool, and (3) the rule should not be extended to nonowners.

Reversed and remanded.

JUSTICE GOLDENHERSH, specially concurring:

I join in the majority opinion's imposition of duty in this case. I do not join, however, in the opinion's literary and nonjurisprudential remarks.

JUSTICE MAAG, specially concurring:

I concur in the result and the legal discussion in Justice Chapman's opinion. I express no opinion on the matters discussed and quoted which are nonlegal in nature.