ANTHONY PULLIA *et al.*, Plaintiffs-Appellants, v. BUILDERS SQUARE, INC., Defendant-Appellee (Steel King Industries, Inc., Defendant).

First District (2nd Division)    No. 1—93—2377

Opinion filed August 2, 1994.

MaCCabe & McGuire, of Chicago (Edward MaCCabe and Steven Alan Hart, of counsel), for appellants.

Querrey & Harrow, Ltd., of Chicago (Paul Sarauskas and Michael Resis, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

We are asked to review whether the circuit court properly granted summary judgment in favor of defendant, Builders Square, Inc., under the circumstances of this case. We hold that it did not, and reverse and remand for trial.

On Sunday, July 23, 1989, plaintiffs Anthony and Bridie Pullia went to a Builders Square store in Melrose Park, Illinois, to purchase fence posts. Anthony had been to the store on 10 to 15 other occasions and had purchased fence parts there. The Pullias walked around the store for a brief time, noticing it was very busy, and then proceeded to the fence department where there were no other customers.

The store displayed its fence posts on a cantilever rack system anchored to a wall. The rack system held groups of poles horizontally at several heights, beginning at ground level. The rack's metal arms extended from the wall about three feet, at an angle to prevent the posts from rolling off. Signs affixed to the rack system contained the fence posts' size, length, and price. No warning signs were placed on or near the rack system, which was contained in a self-serve area of the store, prohibiting them from serving themselves, or warning them of any danger to themselves should they do so. Builders Square's policy was to assist customers on an "as needed" basis.

Anthony, 6 feet and 2 inches tall, was unable to reach the fence posts he wished to purchase while standing on the floor. The posts were not at the highest level of the rack system, but somewhere lower. Anthony approached a Builders Square employee and requested assistance. The employee responded that he would help him "in a minute," then departed. Anthony waited 15 to 20 minutes. He saw no other employee and wondered if the employee he talked to was ever going to return.

Anthony then decided to help himself to the three fence posts he wanted, seeing no real danger in doing so. Each post was $1^1/2$ inches in diameter, 10 feet in length, and weighed two to three pounds. He stepped up onto the lowest arm of the rack and, with his left hand, held onto the rack's face plate for support. Using his right hand, he removed the three fence posts from the rack, one at a time, and placed them on the floor. Anthony turned and began to step off the rack arm first with his right foot, then his left foot, when he felt his wedding ring catch on the face plate he was holding. He was unable to stop his downward momentum, and his ring finger was completely severed from the knuckle.

Anthony did not know whether the face plate or his ring severed his finger. The face plate did not feel sharp to him. He had never climbed on the rack before, nor had he seen anyone else do so. Builders Square and Steel King Industries, Inc. (Steel King), the manufacturer of the rack system, reported that they had never received any complaints and knew of no injuries associated with the rack.

Anthony and his wife filed a personal injury lawsuit against

Builders Square and Steel King. Count I charged that Builders Square was negligent for failing to: exercise reasonable care in the operation, management, maintenance, and control of its premises; provide adequate staff to assist Anthony; adequately train its staff; store and display merchandise in a manner allowing Anthony to secure its possession safely; inspect the premises for unreasonably dangerous conditions; and warn Anthony. Count IV contained a loss of consortium claim for his wife. The remaining counts, which are not at issue in this appeal, were directed against Steel King. Builders Square's answer denied the allegations of negligence and raised the affirmative defense of comparative negligence.

Builders Square filed a motion for summary judgment as to counts I and IV, claiming (1) it owed no duty to Anthony and (2) his claim is speculative since he does not know whether his ring or the face plate severed his finger. Plaintiffs' response was supported by the deposition testimony of an expert, Gene Litwin, who reviewed the rack's characteristics and expressed an opinion that it was unsuitable for its intended use in a self-service facility because people, who would be expected to load and unload by hand, would have a natural tendency to step up onto it for objects stored too high off the ground to reach while standing flat-footed. He found the display a very natural structure for people to step onto because it had a massive square base, with a flat top 8 to 10 inches off of the floor, which provided a motivation for people to attempt to reach objects temptingly displayed, but just immediately out of their grasp. Litwin also determined that stepping onto the rack was not an open and obvious danger. Nevertheless, the court granted the motion.

On appeal, plaintiffs contend that the circuit court erroneously granted summary judgment in favor of Builders Square. They identify error in the court's holdings that (1) Builders Square owed no duty to Anthony to guard against his injury, and (2) the cantilever rack system was an open and obvious danger as a matter of law. Builders Square responds that it "neither owed nor breached any legal duty that was a proximate cause" of Anthony's injuries.

Summary judgment is appropriate only where the pleadings, affidavits, depositions, admissions, and exhibits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. (*American National Bank & Trust Co. v. National Advertising Co.* (1992), 149 Ill. 2d 14, 22, 594 N.E.2d 313; *Vajda v. Arthur Andersen & Co.* (1993), 253 Ill. App. 3d 345, 352, 624 N.E.2d 1343; *Montes v. Hawkins* (1984), 126 Ill. App. 3d 419, 423, 466 N.E.2d 1271.) To prevail on a claim of negligence, a plaintiff must prove a duty owed, a breach of that duty, and an injury proximately

caused by the breach. *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 140, 554 N.E.2d 223.

In support of their claim that Builders Square owed Anthony a duty to store and display its merchandise in a manner allowing him to secure its possession safely, provide assistance more readily, or warn him of the danger, plaintiffs first cite two analogous decisions. In *Safeway Stores, Inc. v. Leake* (D.C. Mun. Ct. App. 1959), 147 A.2d 439, plaintiff, while in defendant's self-serve grocery store, desired to purchase a box of facial tissues stored on a shelf above her reach. She stepped onto the lowest shelf with her left foot, supported herself by placing her left hand on an upper shelf, and while she reached for the tissue on the top shelf with her right hand, several cans from a middle shelf fell, knocking her down and injuring her. (*Leake*, 147 A.2d at 439.) She charged the store owner with negligence for failing to provide her with a "reacher" or another method to remove goods from high shelves, and for failing to stack properly the canned goods. (*Leake*, 147 A.2d at 440.) The appellate court affirmed the jury's award of damages and stated:

> "In a self-service store, where goods are displayed beyond the reach of a person of ordinary height, and no means are provided for reaching such goods, the store owner is bound to anticipate that a customer may attempt to reach the goods by stepping on a lower shelf or projection and that such action may cause articles to fall from one of the shelves." *Leake*, 147 A.2d at 440.

In *Dougherty v. Great Atlantic & Pacific Tea Co.* (1972), 221 Pa. Super. 221, 289 A.2d 747, a jar of olives fell from a high shelf and struck plaintiff. There was no evidence as to what caused the jar to fall. (*Dougherty*, 221 Pa. Super. at 222, 289 A.2d at 748.) The court affirmed the jury's determination of liability based on negligent stacking of goods, deeming it within the "ambit of reasonableness for a jury to conclude that the stacking of food items to be selected by customers on high shelving, not readily reachable or viewable by employees or by customers, is subjecting customers to an unwarranted risk." *Dougherty*, 221 Pa. Super. at 223, 289 A.2d at 748.

The central issue in the present case is whether Builders Square and Anthony stood in such a relationship to one another that the law imposed a duty of reasonable care upon Builders Square, a question of law to be determined by the court. *Ward*, 136 Ill. 2d at 140.

●1 Generally, in Illinois, a possessor of land owes an invitee on the premises a duty to use reasonable and ordinary care in keeping the premises reasonably safe. (*Flath v. Madison Metal Services, Inc.* (1991), 212 Ill. App. 3d 367, 372, 570 N.E.2d 1218.) To determine whether a duty exists in a certain instance, however, a court must

consider the following factors: (1) the reasonable foreseeability of injury, (2) the likelihood of injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden upon defendant. (*Deibert v. Bauer Brothers Construction Co.* (1990), 141 Ill. 2d 430, 438, 566 N.E.2d 239; *Ward*, 136 Ill. 2d at 151.) The principles contained in sections 343 and 343A of the Restatement (Second) of Torts, adopted in Illinois by our supreme court (*American National Bank & Trust Co.*, 149 Ill. 2d at 26-27), must be taken into account when deciding whether an injury was reasonably foreseeable. *Deibert*, 141 Ill. 2d at 438.

●2 A consideration of these factors compels the finding that the law imposed a duty of reasonable care upon Builders Square under the circumstances of this case. Injury here was reasonably foreseeable because a reasonably prudent person could have foreseen the events which ensued. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 376, 308 N.E.2d 617.) Builders Square's policy is to assist customers on an "as needed" basis; accordingly, the customer decides whether assistance is required. In this atmosphere, it was entirely foreseeable that Anthony, a customer, would step up onto the rack system to obtain the desired fence posts, which were just beyond his reach in a self-serve area of Builders Square. As held in *Leake*, a store owner of a self-serve store who places goods beyond the reach of a person of ordinary height and provides no means for customers to reach those goods "is bound to anticipate that a customer may attempt to reach the goods by stepping on a lower shelf or projection." (*Leake*, 147 A.2d at 440.) We also find it foreseeable that a customer could injure himself or herself in such an attempt, just as it is foreseeable that products stacked on grocery store shelves may topple down, causing injury (see *Staten v. Pamida, Inc.* (1989), 189 Ill. App. 3d 125, 126-27, 544 N.E.2d 1325 (paint cans fell when customer stretched to reach products stacked above them); *Dougherty*, 221 Pa. Super. at 222, 289 A.2d at 748; *Leake*, 147 A.2d at 440; *Mandelino v. Great Atlantic & Pacific Tea Co.* (N.Y. App. Div. 1949), 276 A.D.2d 850, 851, 93 N.Y.S.2d 175, 175-76 (cans fell when 3-foot 9-inch tall, seven-year-old girl reached above her head for product after store manager told her to get that product herself)), it is foreseeable that a metal rack system with protruding metal parts could catch clothing or jewelry, causing injury.

Builders Square's position is that the injury which Anthony sustained was not legally foreseeable. It maintains, "[a]lthough it might be logically foreseeable that a customer would serve himself, it is not reasonably foreseeable that he would injure himself in this way," which can only be described as "freakish" and "fantastic."

This argument must be rejected. Foreseeability does not require that the entity charged with negligence should have foreseen the precise injuries which resulted from the negligent conduct. *Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 111-12, 382 N.E.2d 1205; *Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 380, 50 N.E.2d 497; *Sokolowski v. All Points Distribution Service, Inc.* (1993), 243 Ill. App. 3d 539, 543, 612 N.E.2d 79; *Carter v. Indiana Harbor Belt R.R. Co.* (1989), 190 Ill. App. 3d 1052, 1061-62, 547 N.E.2d 488.

Sections 343 and 343A of the Restatement (Second) of Torts remain to be taken into account in the foreseeability determination. Section 343 states:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger." Restatement (Second) of Torts § 343, at 215-16 (1965).

*Deibert*, 141 Ill. 2d at 434-35; *Ward*, 136 Ill. 2d at 145-46.

The three requisite elements of section 343 are present here. Builders Square (a) should have realized that displaying merchandise beyond the reach of customers of ordinary height, where a lower shelf or projection encourages self-service customers to step up onto it to retrieve goods, subjects customers to an unreasonable risk of harm; (b) should have expected that self-service customers who desire to purchase goods just beyond their grasp may attempt to do so themselves, as they may not discover or realize the danger or will fail to protect themselves against it; and (c) failed to exercise reasonable care to protect self-service customers against the danger, since Builders Square displayed the merchandise just beyond their reach where a lower shelf or projection encouraged them to step up onto it and did not warn of the danger.

Section 343A limits the liability contained in section 343 and provides in pertinent part that "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them." (Restatement (Second) of Torts § 343A(1), at 218 (1965).) Accordingly, a possessor of land generally is not liable for an invitee's injury if the condition of the land which caused the injury was known or obvious to the invitee. (*Deibert*, 141 Ill. 2d at 437.) Invoking relative and imprecise characterizations such as "known" or "obvious" cannot

substitute for properly assessing the scope of a landowner's duty. (*Ward*, 136 Ill. 2d at 147-48.) The word "known" means "not only knowledge of the existence of the condition or activity itself, but also an appreciation of the danger it involves." (Restatement (Second) of Torts § 343A, Comment *b*, at 219 (1965).) "Obvious" denotes "that both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." Restatement (Second) of Torts § 343A, Comment *b*, at 219 (1965).

Plaintiffs challenge the circuit court's holding that, as a matter of law, the rack system posed an open and obvious danger, claiming it is a question of fact in this case. We agree.

Plaintiffs' expert testified regarding the rack's characteristics and determined that stepping onto it was not an open and obvious danger. Anthony testified that he did not see "any real danger" in getting the fence posts down himself. Builders Square failed to present any evidence whatsoever on this issue. Given this evidence, we cannot conclude that stepping onto the rack system posed such a blatantly open and obvious danger to Anthony so as to negate the existence of a duty upon Builders Square. (*Cf. Deibert*, 141 Ill. 2d at 442; *Ward*, 136 Ill. 2d at 148.) The obviousness of the danger in this case and Anthony's own negligence may affect whether and to what extent he is comparatively negligent, but they do not affect the duty owed by Builders Square as the possessor of land. (*Maschhoff v. National Super Markets, Inc.* (1992), 230 Ill. App. 3d 169, 174, 595 N.E.2d 665 (citing *Deibert*, 141 Ill. 2d at 442; *Ward*, 136 Ill. 2d at 143, 156-57); Restatement (Second) of Torts § 343A, Comment *f*, at 220 (1965); see *Pease v. Ace Hardware Home Center of Round Lake No. 252c* (1986), 147 Ill. App. 3d 546, 552-53, 498 N.E.2d 343 (comparative negligence applied in similar situation).) Whether the condition presented at Builders Square itself served as sufficient notice of its presence or whether further precautions were necessitated to fulfill Builders Square's duty must be left to the trier of fact. (*American National Bank & Trust Co.*, 149 Ill. 2d at 29-30.) The trier of fact should be instructed accordingly upon remand.

If the trier of fact determines that the rack was an open and obvious danger, plaintiffs maintain, Builders Square still owed Anthony a duty as it should have anticipated that he would fail to avoid the dangerous condition. An exception contained in section 343A(1) provides that a possessor of land will be liable for injuries caused by an open and obvious danger, if "*the possessor should anticipate the harm despite such knowledge or obviousness.*" (Emphasis added.) (Restatement (Second) of Torts § 343A(1), at 218 (1965); *Deib-*

*ert*, 141 Ill. 2d at 437.) This duty may require the possessor of land to warn the invitee or to take other reasonable steps to protect the invitee against the known or obvious condition or activity. Restatement (Second) of Torts § 343A, Comment *f*, at 220 (1965); *Ward*, 136 Ill. 2d at 149-50.

Comment *f* of the Restatement gives two examples of such a situation: (1) "where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it"; and (2) "where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." (Restatement (Second) of Torts § 343A, Comment *f*, at 220 (1965).) Although Builders Square cannot be held to anticipate negligence on Anthony's part, it may be found by the fact finder reasonably to have anticipated that Anthony may have failed to protect himself against an otherwise obvious risk (*Ward*, 136 Ill. 2d at 152), or that to a reasonable person in Anthony's position the advantages of using the display rack as he did outweighed any risk apparent to him. Upon remand, if plaintiffs renew this contention and present sufficient evidence to support their claim that either example applies, the trier of fact may be instructed accordingly.

The factors other than foreseeability also favor the imposition of a duty upon Builders Square. The second factor, the likelihood of injury, is sufficiently great to impose a duty upon the store owner.

The last two factors—the magnitude of the burden of guarding against the injury and the consequences of placing that burden upon defendant—are intertwined here. Builders Square insists that the burden of guarding against injury in this circumstance is too great to be placed upon it. Plaintiffs claim the burden is light, as Builders Square easily could discontinue its practice of storing merchandise too high, permanently assign a sales clerk to the fence department, restrict access of customers to certain areas, or post warning signs to alert customers to stay off the rack system. In response, Builders Square claims that plaintiffs seek a court-declared duty requiring that "each customer receive full service and personalized attention, or that a store keep its wares from its customers or that it not utilize its space most economically for their benefit, contrary to its mode of operation in providing service 'as needed' and the nature of the hardware business."

An argument similar to Builders Square's was rejected in *Dougherty*. There, the defendant store averred that an imposition of a duty not to stack items beyond the normal reach of customers "would lead

to economic waste in limiting the vertical space available" for its business. (*Dougherty*, 221 Pa. Super. at 222, 289 A.2d at 748.) The court answered that "such an economic loss, assuming that it exists, is to avoid a risk which should be borne by such commercial enterprises as a cost of doing business." (*Dougherty*, 221 Pa. Super. at 222, 289 A.2d at 748.) We find this view persuasive. Store owners who desire to stack merchandise vertically in order to increase profit should be liable for a customer's foreseeable injury resultant from the practice, minus any amount attributable to the customer's comparative negligence.

Lastly, the existence of a duty turns in large part on public policy considerations. (*Ward*, 136 Ill. 2d at 151.) As a matter of public policy, self-service merchandisers should display their wares so that customers may procure them safely without assistance or provide more readily available assistance or warn of the danger. See generally Annot., 61 A.L.R.4th 27, 3-4 (1988 & Supp. 1993); 27 Am. Jur. 2d Proof of Facts *Dangerous Retail Floor Displays*, at 189, 22-27 (1981 & Supp. 1993); 62A Am. Jur. 2d *Premises Liability* §§ 595—602 (1990).

Builders Square additionally asserts that it owed no duty which was the proximate cause of Anthony's injury. The record shows that Anthony's finger was severed when his ring caught on the rack system. Consequently, lack of proximate cause, here primarily a fact question, provides no basis for affirming the summary judgment.

For the reasons expressed in this opinion, the entry of summary judgment is reversed and the cause remanded for trial.

Reversed and remanded.

DiVITO, P.J., and SCARIANO, J., concur.