ELENA CASTANEDA, Plaintiff-Appellant, v. COMMUNITY UNIT SCHOOL DISTRICT NO. 200 *et al.*, Defendants-Appellees.

Second District   No. 2—94—0365

Opinion filed December 14, 1994.

James W. Holman, of Cellucci, Yacobellis & Holman, of Naperville, for appellant.

James P. Hynes, of Modesto, Reynolds & McDermott, of Wheaton, for appellees.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Elena Castaneda, appeals from an order granting summary judgment to defendants, Community Unit School District No. 200, Wheaton Central High School, and Virginia Parrish, on plaintiff's personal injury claim arising out of a bicycling accident. We affirm.

This case was earlier on appeal from a trial court ruling dismissing a count of the complaint alleging negligence against defendants Community School District No. 200 and Wheaton Central High School. (See *Castenada v. Community School District No. 200* (1992), 226 Ill. App. 3d 514.) The earlier appeal has no direct relationship to the issues now before us.

The following summary of the facts is taken from the record on appeal. Plaintiff filed a lawsuit against defendants for damages resulting from a collision between her bicycle and that of defendant Virginia Parrish (age 16), who was one of approximately 30 Wheaton Central High School students participating in a class outing. The outing consisted of a 30-minute round trip bicycle ride along the Illinois Prairie Path in Wheaton, Illinois. The outing was supervised by Michael Cowen, a physical education instructor employed by Wheaton Central High School, a component of Community Unit School District 200. Plaintiff's complaint alleged that Cowen's supervision of the class amounted to willful and wanton conduct which proximately caused her injuries.

Plaintiff's injury occurred on the Illinois Prairie Path, a publicly owned recreational nature trail accessible to the general public for biking, running, and walking. According to Cowen's deposition testimony, prior to plaintiff's accident, the students had bicycled on the path approximately 10 times. Additionally, prior to the accident, Cowen spent a class period instructing the students on bicycle safety based on his practical experience and education. When shown a copy of a bicycle rules pamphlet published by the State of Illinois, Cowen admitted he did not use any books or manuals to instruct the students, but stated that he taught all of the material in the booklet to the students, as well as giving them additional instruction. He directed the students to ride single file on the prairie path because he knew that at various points the path was wide enough to accommodate only two bicycles passing in opposite directions. He told the students that it was necessary for them to ride single file to allow riders from the opposite direction to pass.

Upon completion of the instruction period, Cowen took the students on an initial bicycle tour to familiarize them with the prairie path. After that, he allowed the students to bicycle at their own pace.

Immediately prior to the accident, the students were riding 10- and 12-speed bicycles which could travel at speeds of between 10 and 25 miles per hour. The bicycles were strung out at varying intervals for some distance. According to Cowen, the contour of the prairie path is generally straight and level. To keep count of the number of students on the outward part of the trip, Cowen rode at the head of the group and was aware the students were not riding as a single cohesive group. He rode at the rear of the group on the homeward journey.

In her deposition, plaintiff testified that the path was straight and level with no curves where the accident occurred. Plaintiff first noticed Virginia Parrish approximately one minute before the collision occurred. She continued to observe Virginia as they moved closer together and saw Virginia's bike moving closer towards plaintiff's side of the path. At one point she saw Virginia look at her. However, from that point until the collision occurred, Virginia never moved her bike back into the single lane of traffic. Rather, she remained abreast of the student next to her. Plaintiff observed Virginia continuing to talk to the student next to her. During this period, plaintiff did not yell or say anything to Virginia, nor did she drive off of the bicycle path itself. Instead, she waited until the last minute and then moved her bicycle to the right edge of the path but not off the path. Despite this action, a collision occurred between Virginia and plaintiff, causing injuries to plaintiff.

Following the collision, one or two students rode ahead and informed Cowen of the accident. Cowen was riding at the head of the group, a distance of approximately one-half to three-quarters of a mile from the site of the accident. Upon reaching the scene, Cowen heard Virginia state that she knew she should not have been riding abreast of the other student.

After hearing argument on defendants' summary judgment motion, the trial court found that as a matter of law the teacher's supervision did not constitute willful and wanton conduct and that there were no genuine issues of material fact. Accordingly, the court granted summary judgment to defendants. On appeal, plaintiff contends the trial court's decision to grant summary judgment was erroneous because there is a material issue of fact as to whether Cowen's conduct was willful and wanton under the definition of that term used by Illinois courts. In response, defendant argues that al-

though reasonable minds could differ as to whether the evidence is sufficient to show negligence by Cowen, there is nothing in the record to indicate his actions were willful and wanton.

Summary judgment is a drastic means of disposing of litigation and accordingly should be utilized only when the moving party's right to it is clear and free from doubt. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) However, summary judgment is appropriate if the pleadings, depositions, affidavits, and admissions on file show there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. (735 ILCS 5/2—1005(c) (West 1992); *Crum & Forster Managers Corp. v. Resolution Trust Corp.* (1993), 156 Ill. 2d 384, 390-91.) Where reasonable persons may fairly draw different inferences from those facts which are not in dispute, the motion must be denied. (*Kirksey v. Trefzger* (1988), 175 Ill. App. 3d 891, 897.) The appellate court must conduct a *de novo* review of a trial court's ruling on a motion for summary judgment. *Crum*, 156 Ill. 2d at 390.

Plaintiff requests that, in reviewing the evidence, we utilize the definition of willful and wanton conduct set forth in *Landers v. School District No. 203* (1978), 66 Ill. App. 3d 78. *Landers* states that willful and wanton misconduct can be found where plaintiff's acts were

> " 'Committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness, or carelessness when it could have been discovered by the exercise of ordinary care.' " (*Landers*, 66 Ill. App. 3d at 82, quoting *Hocking v. Rehnquist* (1969), 44 Ill. 2d 196, 201.)

Based on this definition, plaintiff argues that, as a matter of law, a genuine issue of fact exists as to: (1) whether Cowen knew of the impending danger to plaintiff and failed to exercise ordinary care to prevent it; and (2) whether he failed to discover the danger to plaintiff through carelessness when it could have been discovered by the exercise of ordinary care.

In contrast, defendants urge us to review the evidence under the definition of willful and wanton conduct set forth in *Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429. At issue in *Burke* was whether a plaintiff's negligence can be compared to a defendant's willful and wanton conduct under comparative negligence principles utilized in Illinois. The supreme court held in *Burke* that willful and wanton conduct is found where an act was done " ' "with actual intention or with a conscious disregard or indifference for the consequences when the known safety of other persons was in-

volved." ' " (*Burke*, 148 Ill. 2d at 451, quoting *Lynch v. Board of Education of Collinsville Community Unit District No. 10* (1980), 82 Ill. 2d 415, 430, quoting *Myers v. Krajefska* (1956), 8 Ill. 2d 322, 328-29.) *Burke* adopted the definition of willful and wanton conduct set forth in the Restatement (Second) of Torts. (Restatement (Second) of Torts § 500, Comment *g*, at 590 (1965).) Comment *g*, as cited by *Burke*, states that there is a qualitative difference between negligence and willful and wanton conduct in that willful and wanton conduct carries a degree of opprobrium not found in merely negligent behavior. *Burke*, 148 Ill. 2d at 451.

Recently, our supreme court decided the case of *Ziarko v. Soo Line R.R. Co.* (1994), 161 Ill. 2d 267, cited by neither party to this appeal. In *Ziarko*, the issue was whether the Joint Tortfeasor Contribution Act (Act) (740 ILCS 100/0.01 through 100/5 (West 1992)) permits a defendant found guilty of willful and wanton conduct to seek contribution from a defendant found guilty of ordinary negligence. The court ruled that the Act permits a defendant found guilty of willful and wanton conduct to seek contribution from a defendant found guilty of ordinary negligence, provided that the willful and wanton acts did not amount to intentionally tortious conduct.

The court's analysis resulted in a revisitation of the distinction between negligence and willful and wanton conduct. *Ziarko* acknowledged that prior Illinois law has been inconsistent on the degree to which negligent acts are similar to willful and wanton behavior. (*Ziarko*, 161 Ill. 2d at 274; see *Wassell v. Adams* (7th Cir. 1989), 865 F.2d 849.) It further observed that, in Illinois, willful and wanton conduct developed as a "hybrid between acts considered negligent and behavior found to be intentionally tortious." (*Ziarko*, 161 Ill. 2d at 275.) *Ziarko* rejected *Burke*'s holding that willful and wanton acts were the same as the definition of recklessness set forth in the Restatement (Second) of Torts. (*Ziarko*, 161 Ill. 2d at 278.) It also rejected *Burke*'s holding that there is a "qualitative distinction" between simple negligence and willful and wanton misconduct except as to that part of willful and wanton conduct which amounts to intentional behavior (*Ziarko*, 161 Ill. 2d at 276; see *Burke*, 148 Ill. 2d at 451).

*Ziarko* emphasized that willful and wanton conduct is distinct from both negligent and intentional conduct and pointed out the fact that both reckless and intentional conduct can lie within the scope of willful and wanton conduct. In its attempt to clarify the meaning of willful and wanton conduct, *Ziarko* offered the following view on the position occupied by willful and wanton conduct *vis-a-vis* negligence and intentional conduct:

" '[Willful and wanton conduct] is generally considered in that

area of fault between ordinary negligence and actual malice. In view of the fact that it is a matter of degree, a hard and thin line definition should not be attempted.' [Citation.] Under the facts of one case, willful and wanton misconduct may be only degrees more than ordinary negligence, while under the facts of another case, willful and wanton acts may be only degrees less than intentional wrongdoing." (*Ziarko*, 161 Ill. 2d at 275-76.)

*Ziarko* offered the following definition of willful and wanton conduct:

" 'A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care.' " (*Ziarko*, 161 Ill. 2d at 273, quoting *Schneiderman v. Interstate Transit Lines, Inc.* (1946), 394 Ill. 569, 583.)

We note that, except for the addition of the concept of "intentional" conduct, this is the same definition as that set forth in *Landers* and invoked by plaintiff.

In creating a definition for the type of willful and wanton conduct which is termed reckless, *Ziarko* cited with approval the Civil Illinois Pattern Jury Instructions. According to those instructions, where there is an allegation of willful and wanton acts constituting recklessness, the trial judge should instruct the jury as follows:

"When I use the expression 'willful and wanton conduct' I mean a course of action which shows an utter indifference to or conscious disregard for [the safety of others]." Illinois Pattern Jury Instructions, Civil, No. 14.01 (3d ed. 1993) (hereinafter IPI Civil).

With the definitions of willful and wanton conduct found in *Ziarko* and the IPI Civil jury instructions in mind, we find that the trial court properly granted summary judgment to defendants. The heart of plaintiff's argument is that Cowen, as a school instructor, recklessly supervised his students, *vis-a-vis* the plaintiff, during a school bicycle outing. Thus, the critical question before us is whether reasonable minds could draw different inferences as to whether Cowen's supervision of the students amounted to reckless conduct, *i.e.*, conduct exhibiting utter indifference to or reckless disregard of the safety of plaintiff and others using the bicycle path. Based on the undisputed facts presented, we do not think reasonable minds could so differ.

First of all, except for being narrow in parts, there was nothing about the makeup of the path itself that would have forewarned Cowen of the possibility of a bicycle collision. Nor was there anything to forewarn him that one of his students would steer her bicycle directly

into the way of a bicycle approaching from the opposite direction. Cowen had specifically directed the students to ride single file on the path; the class had been on 10 previous outings on the prairie path; Cowen had exercised supervision while bicycling either ahead of or behind the students on these occasions; and there was no evidence that, during the previous outings, any of the students, including Virginia Parrish, had disregarded Cowen's instruction not to ride two abreast while on the path. It is noteworthy, also, that high school students were involved here. Virginia Parrish was 16 years of age, old enough to be granted a driver's license and presumably more aware and predictable than a younger child. These facts are not adequate, as a matter of law, to support the conclusion that Cowen acted with utter indifference to or reckless disregard of the safety of others.

Plaintiff postulates that the bicycle collision would have been prevented if the instructor's supervision at the time had consisted of riding at the rear of the group and the group had been required to ride as a more cohesive unit. According to plaintiff, if this had been done, the instructor could have observed all of the students and prevented them from operating their bicycles abreast of one another and prevented them from steering into the path of an oncoming bike. However, while the failure to take these steps might demonstrate ordinary negligence, it could not amount to recklessness. The mere fact that Cowen could have done more to prevent the accident does not, without more, permit a jury to conclude that he acted with reckless disregard for the safety of others.

With respect to plaintiff's argument, we find the following language of *Mancha v. Field Museum of Natural History* (1972), 5 Ill. App. 3d 699, 702, instructive regarding the burden of supervising students placed upon school districts:

> "A teacher cannot be required to watch the students at all times while in school, on the grounds, or engaged in school-related activity. If the law imposed such burdens it would well discourage schools and teachers from affording opportunities to children to enjoy many extracurricular activities. It has long been recognized that something other than classroom teaching is needed for a sound education. Learning is not confined to books." *Mancha*, 5 Ill. App. 3d at 702.

See also *O'Brien v. Township High School District 214* (1980), 83 Ill. 2d 462; *Clay v. Chicago Board of Education* (1974), 22 Ill. App. 3d 437.

To say that Cowen had a duty to foresee and prevent the bicycle collision under the totality of the facts before us would impose on school districts and the teachers they employ a burden approaching

strict liability and make outdoor school field trips impossible. Given the students' prior incident-free experience on the path and the extensive instruction on safe bicycle riding given by Cowen, no reasonable jury could find that he was reckless. We therefore conclude that the uncontested facts of the instant case are insufficient as a matter of law to constitute willful and wanton conduct.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

DOYLE and COLWELL, JJ., concur.