DAVID SMITH, Plaintiff-Appellant, v. CHICAGO PARK DISTRICT, Defendant-Appellee.

First District (3rd Division)    No. 1—92—4442

Opinion filed February 8, 1995.

GREIMAN, P.J., dissenting.

Stotis & Baird, of Chicago (Peter Coules, of counsel), for appellant.

Nelson A. Brown, Jr., of Chicago Park District, of Chicago, for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, David Smith, filed an action against defendant, the Chicago Park District, to recover damages for injuries he sustained

when he dove into Lake Michigan and struck his head on a submerged object. Defendant filed a motion for summary judgment which was granted, and plaintiff has appealed. We reverse and remand.

There are three issues presented: (1) whether the trial court erred in striking the two affidavits of plaintiff's expert witness; (2) whether the alleged facts are sufficient to establish a duty to warn plaintiff of an unreasonable risk of harm; and (3) whether the alleged facts are sufficient to establish that defendant breached its duty to warn.

In his second amended complaint, plaintiff alleged that on August 3, 1985, he was injured when he dove into the lake from a rock formation bordering the lake at the Foster Avenue Beach in Chicago, Illinois. He also alleged that defendant committed one or more of the following wilful and wanton acts:

(a) Maintained said swimming area with utter indifference to, or conscious disregard for, the safety of the plaintiff;

(b) Supervised said swimming area with utter indifference to or conscious disregard for the safety of the plaintiff;

(c) Did not warn of a dangerous condition, to wit, that it was not safe to dive into the water off of the rocky steps approximately 15 to 20 feet north of the sandy portion of the beach with utter indifference to, or conscious disregard for, the safety of the plaintiff;

(d) Did not correct or remove the dangerous condition when they knew of its danger to persons in the swimming area with utter indifference to, or conscious disregard for, the safety of the plaintiff.

During a deposition, plaintiff testified that on August 3, 1985, he and a friend went to the Foster Avenue Beach around 10 a.m. Plaintiff stated that when he and his friend arrived at the beach, they stopped near some large rock formations that bordered the lake about 50 feet north of the sandy part of the beach. There were about 20 other people frolicking on the rock formations, and many of them were jumping and diving into the lake. Also, there was a metal ladder built into one of the rocks, which enabled people to climb out of the water and back onto the top of the rock.

Plaintiff testified that after he dove into the water, he struck his head on a submerged object and suffered severe injuries. Plaintiff also testified that he had not checked the depth of the water prior to his dive. He merely looked at the surface of the water and believed that the water was deep enough for safe diving. Plaintiff previously dove into the water from this same location without incident. Also, prior to diving, plaintiff had seen someone else diving into the water at this location, without incident.

In addition, plaintiff testified that although there were two

lifeguards on the sandy part of the beach, there were no lifeguards near the rock formations. He also testified that there were not any "No Diving" notices stenciled on the rocks or posted signs near the rocks. Defendant, however, maintained that there were warning signs stenciled on the rocks and warning signs posted on poles which warned the public of the dangers of diving into the water around the rock formations.

After the plaintiff's deposition was taken, defendant filed a motion for summary judgment. Plaintiff submitted Dr. Alan Caskey's affidavit in opposition to the motion. Dr. Caskey has a Ph.D. in recreation and park administration, and has expertise in the design and maintenance of lakefront recreational areas of the kind that is at issue in this case.

Defendant filed a motion to strike Dr. Caskey's affidavit. The trial court granted the motion, and plaintiff filed a supplemental affidavit by Dr. Caskey. Defendant then filed a motion to strike Dr. Caskey's supplemental affidavit. The trial court ruled that there was virtually no difference between Dr. Caskey's original and supplemental affidavits, and granted defendant's motion to strike the supplemental affidavit. The trial court then granted defendant's motion for summary judgment on the basis that defendant did not owe plaintiff a duty to warn.

We first address whether the trial court erred in striking the affidavits of Dr. Caskey. In his original affidavit, Dr. Caskey made the following statements:

"5. That based on my review of plaintiff's deposition, and my knowledge and experience concerning the area in question, it is my opinion that the plaintiff struck a submerged object and not the natural bottom of the lake.

6. That there are nationally recognized standards in the operation of recreational areas such as the area at issue.

7. That based on said standards, a park district that has developed a lakeshore for recreational purposes, that maintains an area with a sandy beach and lifeguards, and also maintains an adjacent area consisting of a paved, rocky wall with ladders along said wall, must either survey the area where the diving occurs to determine that there are no submerged hazards, or must effectively prohibit diving.

8. That an adult of reasonable intelligence, seeing the beach, the lifeguards, the rocky wall, the ladders along the wall, with knowledge that the lake is very deep at this location, and with knowledge of a long history of diving off said wall, would not expect there to be submerged rocks that would pose a serious risk of serious personal injury.

9. That I make this affidavit based on personal knowledge, expertise, and/or materials that are reasonably relied on by experts in my field."

Dr. Caskey's supplemental affidavit was similar to his original affidavit. In the supplemental affidavit, however, Dr. Caskey stated that he based some of his opinions upon facts testified to by plaintiff in his deposition, including the following: (1) that plaintiff had been swimming at the Foster Avenue Beach since he was 10 years of age; (2) that plaintiff usually entered the lake by diving off of the rocks located near Hollywood Avenue, approximately 50 feet away from the beach; and (3) that plaintiff had been diving in the area in question approximately one week before his accident, whereupon he observed that the water was 12 to 15 feet deep. In his supplemental affidavit, Dr. Caskey also stated:

"5. That based on my review of the plaintiff's deposition, and my knowledge and experience concerning the area in question, it is my opinion that the plaintiff struck a submerged object and not the natural bottom of the lake.

***

7. That I have been to the site personally on occasions prior to the date of the accident and know that the area had been used for diving and swimming for many years and diving was commonplace.

8. That I am personally familiar with the area and the water is very deep that when the plaintiff did a flat dive, on the date of the accident, he did not strike the bottom but instead struck a submerged object.

9. That there existed ladders on the wall, on the date of the accident, for which people used to climb back onto the rocks to dive.

10. That the defendants in response to a request to admit; admitted that they maintained the area that the lifeguards patrolled—the sandy portions of the beach.

11. That there are nationally recognized standards in the operation of recreational areas such as the area at issue. The national standards are as follows: National Water Safety Congress and Life Saving Manual by U.S. Life Saving Association.

12. That based on said standards, a park district that has developed a lake shore for recreational purposes, that maintaining an area with a sandy beach and lifeguards, and also maintains an adjacent area consisting of a paved rocky wall with ladders along the wall coming out of the water, and where diving is commonplace off of said wall must either survey the area where the diving occurs to determine that there are no submerged hazards, or must effectively prohibit diving.

13. That an adult of reasonable intelligence, seeing the beach, the lifeguards, the rocky wall, the ladders along the wall, with knowledge that the lake is very deep at this location, and with knowledge of a long history of diving off said wall, would not expect there to be submerged rocks that would pose a serious risk of serious personal injury.

14. That I make this affidavit based on personal knowledge, expertise, and/or materials that are reasonably relied on by experts in my field."

Affidavits in opposition to motions for summary judgments are governed by Supreme Court Rule 191. (134 Ill. 2d R. 191.) Supreme Court Rule 191 provides that affidavits in opposition to a motion for summary judgment shall be made on the personal knowledge of the affiant; shall set forth with particularity the facts upon which the claim is based; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can competently testify thereto. In addition, the failure of an expert witness to state the specific facts which form the bases of his opinions renders the expert witness' affidavit deficient. See *Hagy v. McHenry County Conservation District* (1989), 190 Ill. App. 3d 833, 841, 546 N.E.2d 77, 83; *J. Roth Builders, Inc. v. Aetna Life & Casualty Co.* (1987), 151 Ill. App. 3d 572, 573, 503 N.E.2d 782, 783.

In the present case, although there is not a wealth of specific facts forming the bases for the opinions in Dr. Caskey's affidavits, there are nevertheless sufficient facts stated. The scant specific facts is a matter that goes to the weight and not to the admissibility of Dr. Caskey's opinions. Thus, the believability of Dr. Caskey's opinions is for a trier of fact to resolve rather than a judge or judges. The trial court therefore erred in striking the affidavits.

Moreover, if an affidavit contains some admissible statements, only those statements that are inadmissible should be stricken, but the rest of the affidavit remains. (*Murphy v. Urso* (1982), 88 Ill. 2d 444, 462-63, 430 N.E.2d 1079, 1088; *Nardi, Pain & Podolsky, Inc. v. Vignola Furniture Co.* (1967), 80 Ill. App. 2d 220, 227, 224 N.E.2d 649, 653-54.) Here, rather than striking whatever statements the trial court felt were inadmissible, the trial court struck the entire affidavits. The striking of the affidavits was therefore plainly erroneous.

We next address whether the trial court erred in ruling that summary judgment was proper because defendant did not owe plaintiff a duty to warn. More specifically, the trial court agreed with defendant's contention that defendant owed no duty to warn plaintiff because the danger was open and obvious. The trial court erred.

The open and obvious doctrine is not to be slavishly applied any longer as a *per se* rule to deny liability. Rather, a defendant's duty to exercise reasonable care under all the circumstances of a case remains intact despite the existence of an open and obvious condition. (*Deibert v. Bauer Brothers Construction Co.* (1990), 141 Ill. 2d 430, 566 N.E.2d 239; *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 146, 554 N.E.2d 223, 229; *Bucheleres v. Chicago Park District* (1994), 269 Ill. App. 3d 791; *Pullia v. Builders Square, Inc.* (1994), 265 Ill. App. 3d 933, 638 N.E.2d 688.) Moreover, the scope of a defendant's duty is not defined in reference to a plaintiff's negligence or lack of negligence. Instead, the focus must be on the defendant. (*Ward,* 136 Ill. 2d at 148, 554 N.E.2d at 230.) In *Ward*, the court held that a defendant's duty to invitees in Illinois is tantamount to the liability of possessors of land to invitees as provided in the Restatement (Second) of Torts § 343 (1965). Section 343 is set forth in *Ward*:

> " 'A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.' " *Ward*, 136 Ill. 2d at 146, 554 N.E.2d at 229, quoting Restatement (Second) of Torts § 343 (1965).

It is therefore clear that the duty of a possessor of land is to exercise reasonable care to invitees and its duty is no longer nullified *ipso facto* by the so-called open and obvious doctrine. (See *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430, 566 N.E.2d 239; *Pullia v. Builders Square, Inc.*, 265 Ill. App. 3d 933, 638 N.E.2d 688.) But, that does not lessen the obligation of the plaintiff in the present case to set out facts necessary for the existence of a duty that was owed by the defendant to him and which was breached.

Generally, since defendant is a local public entity and liability is based on the existence of a condition of public property intended to be used for recreational purposes, defendant owed plaintiff a duty to refrain from wilful and wanton conduct rather than a duty to exercise reasonable care. (See 745 ILCS 10/3—106 (West 1992).) The gist of the present case, however, involves a more specific duty. Plaintiff maintains that defendant had a duty to warn him if it knew or should have known of an unreasonable risk of harm if he dove into the water from the rock formations. The linchpin of plaintiff's contention is whether defendant's failure to have adequately warned him would

constitute wilful and wanton conduct. See 745 ILCS 10/3—106 (West 1992).

Wilful and wanton conduct as it relates to civil cases may be either intentional or reckless. Wilful and wanton conduct that is reckless includes acts that exhibit a reckless disregard for the safety of others, such as (1) a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or (2) a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care. (See *Ziarko v. Soo Line R.R. Co.* (1994), 161 Ill. 2d 267, 273, 641 N.E.2d 402, 405.) Moreover, wilful and wanton conduct that is reckless is sufficient to sustain a cause of action against a local public entity, such as defendant in the present case. See 745 ILCS 10/1—210, 3—106 (West 1992).

Here, the following salient facts can be culled from the record. Plaintiff dove into water adjacent to public beach property which was developed by defendant for recreational purposes. The recreational area included rock formations which abutted the water, and defendant provided a ladder attached to one of the rocks, which clearly invited swimmers to dive into the water and use the ladder to climb back ashore. When plaintiff dove into the water, he struck his head on a submerged object and was seriously injured. The plaintiff alleges that no warnings were marked or posted in the area where the incident occurred.

■ Plainly, the submerged object constituted an unreasonable risk of harm to the plaintiff. It follows that if defendant knew of the submerged object or failed to discover it through recklessness or carelessness when it could have been discovered by the exercise of ordinary care, and defendant did not adequately warn plaintiff of the danger, then defendant would be guilty of wilful and wanton conduct. Thus, assuming that the facts alleged are true, defendant had a duty to adequately warn plaintiff of the danger.

Whether defendant knew of the danger or failed to discover it through recklessness or carelessness when it could have been discovered by the exercise of ordinary care is a factual question to be decided by the trier of fact. Likewise, whether defendant breached its duty is a factual question.

Accordingly, the orders striking the affidavits of Dr. Caskey are reversed and the summary judgment is reversed. The case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

TULLY, J., concurs.

PRESIDING JUSTICE GREIMAN, dissenting:

I must respectfully dissent for several reasons although the opinion is thoughtfully crafted and persuasive.

I believe that the doctrine of open and obvious still controls in cases where an adult plaintiff dives into a natural body of water and is thereby injured when he hits bottom. The majority correctly observes that the open and obvious doctrine has exceptions and ought not to be slavishly applied. *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 554 N.E.2d 223; but see *Mount Zion State Bank & Trust v. Consolidated Communications, Inc.* (1994), 267 Ill. App. 3d 402, 641 N.E.2d 1228 (questioned the continued validity of the doctrine of open and obvious).

However, it is precisely this genre of cases to which it is still applicable. *Dowen v. Hall* (1989), 191 Ill. App. 3d 903, 548 N.E.2d 346, sets forth the law in Illinois with respect to adult plaintiffs injured during a dive into a body of water. In the instant case, the majority rests its decision upon the fact that the dive is from rocks along the Lake Michigan shore and that there is a ladder attached to the rocks which perhaps is an invitation to dive off the rocks into unknown waters. The majority concludes that the ladder is so inviting that an exception is created to the open and obvious doctrine. To support such a conclusion, the majority relies upon *Deibert v. Bauer Brothers Construction Co.* (1990), 141 Ill. 2d 430, 566 N.E.2d 239, *Ward* (136 Ill. 2d 132, 554 N.E.2d 223), *Bucheleres v. Chicago Park District* (1994), 269 Ill. App. 3d 791 (a companion case filed on this day), and *Pullia v. Builders Square, Inc.* (1994), 265 Ill. App. 3d 933, 638 N.E.2d 688.

*Deibert* and *Ward* both acknowledge that although the duty of care does not extend to known or obvious conditions unless harm can be anticipated despite the obviousness, there can be an exception to this rule where an invitee's attention can reasonably be expected to be distracted. The existence of a ladder is neither the kind of condition that is likely to distract the plaintiff so that he dives off the rocks nor should it diminish the all too apparent risk to be anticipated by a dive into unknown waters.

A closer case is *Pullia*, where the plaintiff caught his jewelry on the defendant's display rack when he stepped upon the rack to reach merchandise on a top shelf. The *Pullia* court reasoned that summary judgment was precluded because whether the rack was an open and obvious danger was a question of fact for the jury. In contrast to *Pullia*, I need not devote much space to the proposition that a dive into a body of water of unknown depth and character is an open and obvious danger.

Having made that observation, I would have been willing to

return this matter to the circuit court for a determination of the facts by a jury if defendant was not a unit of local government sued for its maintenance of recreational facilities. In 1986, the Illinois General Assembly amended the Illinois Local Governmental and Governmental Employees Tort Immunity Act (Act) to provide:

> "Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." 745 ILCS 10/3—106 (West 1992).

The Act defines wilful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others." 745 ILCS 10/1—210 (West 1992).

It is difficult to imagine that the conduct alleged by plaintiff, *i.e.*, placing a ladder on the rocks, is so egregious as to fall within the penumbra of wilful and wanton. Even if the placement of the ladder was negligence on the part of defendant, the law recognizes a clear distinction between negligence and wilful and wanton conduct. (*Ziarko v. Soo Line R.R. Co.* (1994), 161 Ill. 2d 267, 641 N.E.2d 402; *Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, 593 N.E.2d 522.) Thus, even if I were to concede that the defendant failed to act with reasonable care, the facts do not establish the kind of ill will, intention to cause harm or conscious indifference to the safety of plaintiff to establish a factual basis for wilful and wanton conduct. Generally, this determination is reserved for the trier of fact. (*E.g., Brown v. Chicago Park District* (1991), 220 Ill. App. 3d 940, 581 N.E.2d 355.) However, based upon the present record, there are no questions of fact which, if resolved in plaintiff's favor, would sustain a jury's determination of wilful and wanton. See *Castaneda v. Community Unit School District No. 200* (1994), 268 Ill. App. 3d 99 (affirmed summary judgment to defendants, finding that the uncontested facts were insufficient as a matter of law to constitute wilful and wanton conduct).

For these reasons, I must respectfully dissent.