646 N.E.2d 1326 (1994)
269 Ill.App.3d 791
207 Ill.Dec. 239
Michael BUCHELERES and Betty Bucheleres Bivans, Plaintiffs-Appellants,
v.
CHICAGO PARK DISTRICT, an Illinois municipal corporation, Defendant-Appellee.
No. 1-92-1106.
Appellate Court of Illinois, First District, Third Division.
August 17, 1994.
Rehearing Denied February 6, 1995.
As Modified February 8, 1995.
John Bernard Cashion, Chicago, for appellants.
James D. Wascher, Friedman & Holtz, P.C., Chicago, for appellee.

MODIFIED ON DENIAL OF REHEARING
Justice RIZZI delivered the opinion of the court:
Plaintiffs, Michael Bucheleres and Betty Bucheleres Bivans, filed an action to recover damages against defendant, the Chicago Park District, resulting from personal injuries sustained by plaintiff Michael Bucheleres when he dove off of a concrete seawall into Lake Michigan and struck his head on the bottom of the lake. Defendant filed a motion for summary judgment which was granted. Plaintiffs now appeal. We reverse and remand.
On May 27, 1988, plaintiff Michael Bucheleres fractured his neck upon diving into the lake off of a concrete seawall which extended approximately 100 feet into the lake from the *1327 Oak Street Beach at Division Street and North Lake Shore Drive (Division Ledge). Plaintiffs filed the present action.
On June 8, 1990, defendant filed an answer to plaintiffs' second amended complaint. In its answer, defendant conceded that it maintained and controlled both the Oak Street Beach and the Division Ledge, but denied that it supervised, operated, managed, maintained or controlled the adjacent waters and littoral sand bottom of the lake on the date plaintiff Michael Bucheleres was injured. Defendant, however, admitted that it had the sand graded for it on December 22, 1987, and that it graded the sand from April 19, 1988 through April 22, 1988. Defendant also admitted that on April 23, 1987, William T. Donovan, a surveyor, made a written record that the sand bottom of the lake was five and six tenths feet below the top of the southeast corner of the Division Ledge and Oak Street Beach. Defendant also admitted that it knew of people who were diving from the Division Ledge into the lake during the summer of 1987, and that it knew that persons who dove off of the Division Ledge during the summers of 1983 through 1986 and struck their heads on the bottom of the lake near the seawall.
The trial court was furnished with deposition testimony from several witnesses including Greg Clausen, John Hamilton, Michael Morton and Joseph Pecoraro. Clausen, Hamilton and Morton were all present when plaintiff Michael Bucheleres dove into the lake, and Hamilton and Morton pulled plaintiff out of the lake when they saw him floating face down in the water. Morton, Hamilton and Clausen all testified that they did not see any warning signs in the area of the Division Ledge pertaining to diving or restrictions on diving on the day that plaintiff was injured.
Clausen further testified that in the years that he had visited the Division Ledge area prior to the accident, he had not seen any stenciled signs which said "No Diving" until the year after plaintiff's accident.
Morton testified that the water near the Division Ledge was shallow on the date of plaintiff Michael Bucheleres' dive. Morton testified that he himself brushed the bottom of the lake when he dove into the water from the Division Ledge on the same day. Morton stated that he was surprised when he touched the bottom of the lake because the water appeared to be deeper than it was when he looked down at the water before diving.
Hamilton, who had worked as a lifeguard at the Oak Street Beach during the summers of 1983 through 1985, recalled that during that time, the entire area east of the Division Ledge was hazardous for purposes of diving because of shallow water. Hamilton also testified that there were signs stenciled on the ground which read "No Diving." Hamilton further testified that people dove off of the Division Ledge and hit their heads on the bottom of the lake during this period of time.
Joseph Pecoraro, the general supervisor of beaches and pools for defendant at the time of plaintiff's accident, was also deposed. Pecoraro testified that during the spring of 1988, the water level in the lake had dropped and that the beach was graded every year in such a way that the sand was pushed out into the lake. Pecoraro further testified that he intended to have "No Diving" signs stenciled to the pavement in the area of the Division Ledge before the Oak Street Beach was opened, even if the beaches had not officially opened so that the signs could be read by people at any time.
Upon making the following statement, the trial court granted defendant's motion for summary judgment:
The main issues for us to consider in this case is whether the doctrine of open and obvious danger of a body of water is vitiated by the fact that the defendant effected the death by adding sand and in grading the beach area at Oak Street Beach.
The plaintiff, I think it is uncontroverted in this case, that the plaintiff is swimming in the lake at that location for the first time in this season. The doctrine of open and obvious danger posed by a body of water with a sandy beach with shifts, with currents and disturbances, I don't believe is vitiated by the fact that the Park District graded the beach and added sand which *1328 shifted in the waters thereby affecting the depth from the past year.
It is a large open lake, there are constantly shifting sands from currents. The day the plaintiff was injured was the first day he was swimming at that beach location that season.
It cannot be said that the lake presented perils that the plaintiff did not appreciate. He had a duty to test the depth of the water before diving.
An open and obvious danger of a body of water doctrine applies to this case. The [defendant] had no duty to warn nor can it be said that defendant created a condition under section 3-103 that was not reasonably safe when considering that the condition was sand at the bottom of Lake Michigan, a natural lake with uneven depths at various points and currents creating shifting sand levels.
The open and obvious danger posed by diving into the unchartered waters under the circumstances of this case must control this court's determination. The peril of the lake bottom should have been anticipated.
The plaintiff did not strike his head on a pipe or tree trunk or any other object, the presence of which could not be reasonably anticipated. The plaintiff dived into the water for the first time that year without the requisite precaution of first ascertaining the depth of the water.
There is no Illinois authority on point which supports plaintiffs' position and there is a great weight of authority in support of the defendant's position.
Therefore, the defendant's motion for reconsideration is granted, and the Chicago Park District is granted summary judgment * * *.
It is therefore plain that the summary judgment in favor of defendant was entered because of the open and obvious doctrine. The open and obvious doctrine provides that the duty of reasonable care owed by an owner or occupier of land to those lawfully on the premises does not extend to conditions which are known or obvious. The open and obvious doctrine, however, is not to be slavishly applied any longer as a per se rule to deny liability. Rather, a defendant's duty to exercise reasonable care under all the circumstances of a case remains intact despite the existence of an open and obvious condition. Deibert v. Bauer Brothers Construction Co. (1990), 141 Ill.2d 430, 152 Ill.Dec. 552, 566 N.E.2d 239; Ward v. K'mart Corporation (1990), 136 Ill.2d 132, 146, 143 Ill.Dec. 288, 294, 554 N.E.2d 223, 229; Smith v. Chicago Park District (1st Dist.1995), 269 Ill.App.3d 812, 207 Ill.Dec. 243, 646 N.E.2d 1330; Pullia v. Builders Square, Inc. (1994), 265 Ill.App.3d 933, 202 Ill.Dec. 820, 638 N.E.2d 688. Pursuant to Ward, the law regarding the duty and liability of possessors of land to invitees is as follows:
A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if he
(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
(c) fails to exercise reasonable care to protect them against this danger. Ward, 136 Ill.2d at 146, 143 Ill.Dec. at 294, 554 N.E.2d at 229.
It follows that even if a risk were to be considered open and obvious, a park district still has a duty to exercise reasonable care with respect to persons who use park district beach property for recreational purposes. Additionally, it follows that the duty may include warning potential divers. See Deibert v. Bauer Brothers Construction Co., 141 Ill.2d 430, 152 Ill.Dec. 552, 566 N.E.2d 239; Pullia v. Builders Square, Inc., 265 Ill. App.3d 933, 202 Ill.Dec. 820, 638 N.E.2d 688. In the case sub judice, defendant concedes that it controlled both the Oak Street Beach and the Division Ledge. Although defendant denied having control over the adjacent waters and the sand bottom of the lake, Pecoraro's testimony regarding the dumping and grading of sand shows that defendant did exercise control over these areas. Furthermore, *1329 defendant had actual knowledge of the shallow water because it created the condition by dumping and grading sand on the beach.
In addition, defendant had control over approximately 26 miles of lakefront property. Diving was permitted in some areas but not in others. Also, defendant concedes that signs delineated the areas in which diving was prohibited, and the record shows that defendant had placed signs in the area of the Division Ledge in the past. It follows that summary judgment should not have been entered for defendant in this case because there is a question of material fact as to whether signs prohibiting diving or warning of the dangers of diving in the area of the Division Ledge were sufficient at the time of the occurrence.
Accordingly, the summary judgment is reversed and this cause is remanded for further proceedings consistent with this opinion.
REVERSED and REMANDED.
TULLY, J., concurs.
GREIMAN, P.J., dissents.
Presiding Justice GREIMAN, dissenting:
I must respectfully dissent from the decision modified on denial of rehearing for several reasons although the opinion is thoughtfully crafted and persuasive.
I believe that the doctrine of open and obvious still controls in cases where an adult plaintiff dives into a natural body of water and is thereby injured when he hits bottom. The majority correctly observes that the open and obvious doctrine has exceptions and ought not to be slavishly applied. Ward v. K Mart Corp. (1990), 136 Ill.2d 132, 143 Ill.Dec. 288, 554 N.E.2d 223; but see Mount Zion State Bank & Trust v. Consolidated Communications, Inc. (1994), 267 Ill.App.3d 402, 204 Ill.Dec. 609, 641 N.E.2d 1228 (questioned the continued validity of the doctrine of open and obvious).
However, it is precisely this genre of cases to which it is still applicable. Dowen v. Hall (1989), 191 Ill.App.3d 903, 138 Ill.Dec. 933, 548 N.E.2d 346, sets forth the law in Illinois and I fail to see any genuine difference between the diver in Dowen and the diver in the case at bar. In the instant case, the majority rests its decision upon the fact that there are no warning signs alerting the plaintiff to the risks attendant to diving into unknown waters; however, if it is an open and obvious condition of the land, then no warning should be required.
A similar situation exists in Smith v. Chicago Park District (1st Dist.1995), 269 Ill. App.3d 812, 207 Ill.Dec. 243, 646 N.E.2d 1330, where the majority determines that there is a question of fact as to whether a ladder near the place of diving was so seductive to the plaintiff that an exception to the open and obvious doctrine was recognized.
In Schellenberg v. Winnetka Park District (1992) 231 Ill.App. 3rd 46, 172 Ill.Dec. 814, 596 N.E.2d 93, we distinguished Dowen merely because the plaintiff was a minor. Citing Dowen and Schellenberg, a recent first district decision observed: "While there is authority in the premise liability context which has held that risk to be open and obvious to adults, we cannot reach that conclusion as a matter of law with respect to minors." (Klen v. Asahi Pool, Inc. (1st Dist. 1994), 268 Ill.App.3d 1031, 1044, 205 Ill.Dec. 753, 762, 643 N.E.2d 1360, 1369.) Although Klen imposed liability on behalf of the minor plaintiff, the clear import of the case is that an adult plaintiff would have suffered a different fate.
Here, plaintiff is an adult who understood, without further warning, the danger inherent in diving into a lake, the condition of the bottom of which is uncertain and unknown.
I am additionally concerned that all of this is love's labor lost. Even if this case is returned to the trial court, it is most doubtful that plaintiff's case could withstand a motion for directed verdict since liability must be seated upon defendant's wilful and wanton conduct.
In 1986, the Illinois General Assembly amended the Illinois Local Governmental and Governmental Employees Tort Immunity Act (Act) to provide:
"Neither a local public entity nor a public employee is liable for an injury where the *1330 liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." 745 ILCS 10/3-106 (West 1993).
The Act defines wilful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others." 745 ILCS 10/1-210 (West 1993).
It is difficult to imagine that the conduct alleged by plaintiff is so egregious as to fall within the penumbra of wilful and wanton. Even if the failure to warn was negligence on the part of the defendant, the law recognizes a clear distinction between negligence and wilful and wanton conduct. (Ziarko v. Soo Line R.R. (1994), 161 Ill.2d 267, 204 Ill.Dec. 178, 641 N.E.2d 402; Burke v. 12 Rothschild's Liquor Mart, Inc. (1992), 148 Ill.2d 429, 170 Ill.Dec. 633, 593 N.E.2d 522.) Thus, even if I were to concede that the defendant failed to act with reasonable care, the facts do not establish the kind of ill will, intention to cause harm or conscious indifference to the safety of plaintiff to establish a factual basis for wilful and wanton conduct. Generally, this determination is reserved for the trier of fact. (E.g., Brown v. Chicago Park District (1991), 220 Ill.App.3d 940, 163 Ill. Dec. 404, 581 N.E.2d 355.) However, based upon the record in the present case, there are no questions of fact which, if resolved in the plaintiff's favor, would sustain a jury's determination of wilful and wanton. See Castaneda v. Community Unit School District No. 200 (2d Dist.1994), 268 Ill.App.3d 99, 205 Ill.Dec. 845, 644 N.E.2d 61 (affirmed summary judgment to defendants, finding that the uncontested facts were insufficient as a matter of law to constitute wilful and wanton conduct).
Additionally, the record shows a number of affirmative steps taken by the defendant to insure a safe environment, hardly the conscious indifference required upon which to predicate an action against a public entity in the maintenance of recreational facilities.
For these reasons, I must respectfully dissent.